SISTERS OF MERCY, Appellee, v. W. H. LIGHTNER, Appellant.

No. 43528.

June 15, 1937.

Don Barnes, George C. Gorman, and G. K. Thompson, for appellant.

Donnelly, Lynch, Anderson & Lynch and William M. Dallas, for appellee.

STIGER, J.—The plaintiff is an eleemosynary corporation organized for the purpose of the religious advancement of its members, the education of youth and conducting schools, colleges, hospitals and charitable enterprises, and the owner of a 72-acre tract in Cedar Rapids, Iowa, upon which is located the Mother House and Mt. Mercy College and Academy. The defendant is a member of the Catholic faith. Pursuant to an oral contract between the parties entered into sometime prior to 1927, the defendant undertook to construct and donate a grotto and other structures on the said tract and in 1927 commenced the construction of walls, arches, a lagoon and other structures under said oral contract.

The defendant claims that at the time of the commencement of plaintiff's action the collection of materials and the cost of the structures then completed involved an expense to the defendant of $35,000.

On January 3, 1933, the parties entered into a written contract which reads as follows:

"AGREEMENT

"This agreement made and entered into this 3rd day of January, in the year of Our Lord 1933, by and between Sisters of Mercy, Cedar Rapids, Iowa, incorporated under the laws of the State of Iowa, (not for pecuniary profit), hereinafter known as the party of the first part and W. H. Lightner of Cedar Rapids, Iowa, hereinafter known as the party of the second part, as follows, to-wit:

"WHEREAS: The said W. H. Lightner, party of the second part, with the approval of the party of the first part, has undertaken to design and construct a Grotto in honor of 'The Blessed Virgin Mary, the Mother of our Lord,' together with other extensive and unusual developments in connection therewith, all situated on the following described lots and parcels of land: A portion of the Northwest Quarter of the Southeast Quarter of the Northwest Quarter of Section Fifteen, in Township Eighty-three, North of Range Seven West of the Fifth Principal Meridian; also Lots One, Two and Three in Block One of Mound Farm Additions to the City of Cedar Rapids, Linn County, Iowa.

"The said lots and parcels of land being a portion of the Mount Mercy Junior College and Academy property, with fully complete and proper title of the same, on the date hereof, in the name of the party of the first part, free from any lien or mortgaged incumbrance of public record. It being understood that the Grotto and all its component parts, thus far developed or erected and such as may be developed or erected by the party of the second part, is a donation on the part of the party of the second part for the Honor and Glory of our Lord and His Blessed Mother; as an act of thanksgiving for the faith that God has given to the party of the second part; and to assist the Sisters of Mercy in their good works.

"With hope that Almighty God will bless the work so that it will be pleasing to him and his Blessed Mother in every particular, and so that the thoughts of visitors may be drawn to the extreme importance of obedience to His Holy Will and Laws, the party of the second part hereby pledges his humble efforts.

"It is understood by both parties to this agreement that the party of the first part is not obliged or obligated to pay any cost of materials, including rare stones gathered from the various parts of the world, or any expense of the work thus far completed or for any portion that may be completed by the party of the second part in the future.

"It is agreed that the party of the second part undertook this unusual and extensive project, including the work of designing and constructing the Grotto and all the development work in connection therewith, with the whole-hearted approval of the party of the first part.

"The party of the first part, in consideration of the sacrifices and donation of the party of the second part, hereby agrees to be forever bound to the following conditions:

"First. To grant the party of the second part such reasonable liberty of access to the property and grounds as may be necessary and required by the party of the second part.

"Second. To permit the party of the second part to store stone and/or other materials on the premises.

"Third. To permit the party of the second part to proceed with the work and complete the Grotto and all its component parts and other developments, in every detail according to the plans and intentions of the party of the second part, without interference.

"Fourth. To use all reasonable precaution necessary to properly protect the Grotto and all of its component parts, including the entire work, from damage from any source.

"Fifth. To maintain proper and sufficient insurance at all times upon the Grotto and other various works which the party of the second part has thus far completed or shall construct upon the said premises. This insurance shall fully protect the work against fire, lightning, windstorm, riot or civil commotion, theft, and all forms of malicious damage.

"Sixth. To not sell, grant, devise, convey and/or cause the premises upon which the work is situated to become mortgaged without the approval, in writing, of the party of the second part.

"Seventh. To make no change in any part of the work at any time.

"Eighth. To allow people to visit the Grotto under such regulations and restrictions as the party of the first part may deem proper, on condition that the party of the first part provide suitable guides who shall take precaution that visitors shall not damage the work.

"It is agreed that the party of the first part shall have the privilege of collecting a reasonable entrance fee and all donations made by visitors shall accrue to the benefit of the Sisters of Mercy, party of the first part.

"Maintenance: It shall be the duty of the party of the first part to keep the grounds upon which the Grotto and various parts of the work are, and/or shall be constructed, in a clean, orderly and well regulated condition and shall not permit said grounds to be used as a play grounds.

"The party of the second part agrees that no part of the work shall express anything contrary to the true principles of the Catholic Church and its infallible doctrine, as it is the hope and intention of the party of the second part, in the sacrifice entailed and necessary to construct the Grotto and the other work in connection therewith, to express therein Christian truth and principles; as the party of the second part is firmly convinced that the existing false, man-made, standards prevailing and forced upon our people today is the principal cause of our chaotic conditions and existing woeful suffering of our people.

"Party of the first part agrees to furnish to party of second part on or about the first day of January and the first day of July of each year a complete itemized statement of the amounts

received in donations and other collections from visitors to the Grotto.

"No obligation shall rest upon any heir of the party of second part in the event of the death of the party of the second part.

"Both parties to this agreement, for themselves, their successors, executors, administrators and assigns, hereby agree to the full performance of the covenants herein contained.

"This contract is signed and sealed in duplicate, this 3rd day of January in the year of Our Lord 1933."

The parties agree that the terms of the prior oral contract were substantially the same as the terms of the written contract.

On January 14, 1933, plaintiff executed a mortgage to the defendant upon the real estate described in the contract to secure a loan of $75,000 made to the plaintiff by the defendant. This loan has been paid from proceeds of a loan on other property owned by the plaintiff.

On December 28, 1934, the plaintiff commenced an action to quiet title to said premises and to have the said contract adjudged null and void, alleging therein that said contract was without consideration and was lacking in mutuality; that the said contract burdened the property of the plaintiff corporation and its title thereto to such an extent that neither the officers nor board of directors of the plaintiff corporation had power or authority to execute said agreement; that by obtaining and receiving the mortgage in the sum of $75,000 on the 72-acre tract upon which the work done by the defendant was located and upon which the Grotto was to be constructed, the defendant is now estopped and precluded from asserting any claims under said contract and has waived any rights thereunder; that paragraph No. 6 of the contract which provides that the plaintiff agrees not to sell, rent, devise, convey or cause the premises upon which the work is situated to become mortgaged without the approval in writing of the defendant, has reference not to the entire 72-acre tract but only to the tract of approximately one acre, upon which the Grotto was to be constructed; that said contract intended to provide that the defendant should have a reasonable period only to complete the Grotto and other developments; that all work on the part of the defendant has for a long period entirely ceased and that the defendant has been making and is now making no effort to construct the Grotto or do any further work

in connection with the project. The plaintiff prays that in the event that he is not entitled to a decree declaring the contract null and void that the contract be reformed to conform to the true agreement between the parties and that the real estate intended to be described in the agreement is about one acre, which the plaintiff describes by metes and bounds.

The defendant filed his second amended and substituted answer and cross-petition wherein he admits that he makes claim against the absolute and unqualified fee ownership of the plaintiff in the realty described in the contract and asserts that he makes claim to certain rights under each provision of the contract and admits that plaintiff executed to him a mortgage in the sum of $75,000 and avers that since the beginning of the action that the plaintiff has paid said mortgage in full from the proceeds of a loan negotiated on other property of the plaintiff. Defendant denies that the written contract was intended to describe only one acre of real estate and alleges and avers that the shrine was to be a part and parcel of the entire real estate described in the contract and was to be used in connection with all the said real estate and the buildings and institution located thereon.

The defendant also filed a cross-petition in which he states that the shrine when completed was to be a religious shrine and in conformity with the buildings upon said premises and was to be used in connection therewith and become an intrinsic part thereof to aid and assist the Sisters in charge of the plaintiff corporation in promulgating the teachings of their faith and to exemplify the ideals thereof; that it was to be permanent and perpetual in nature and contemplated the expenditure of a large sum of money by this defendant. The defendant further alleged that the lagoon, walks, rock garden and various other structures and accessories thereto were planned by plaintiff and this defendant to extend over the grounds and among the trees and shrubbery occupied by the college and academy and were generally to be extended about the entire grounds and property of the plaintiff as described in the contract between plaintiff and defendant; that said shrine was designed to supplement the institutions already built and to be used in connection with the entire plan of teaching and purposes of the plaintiff corporation and that the shrine was to be constructed over a long period of time but to be designed so as to be useful and ornamental during construction;

that the materials for the shrine included a great number of different types of mineral specimens, rock formations, petrified wood, etc., of almost countless colors, shapes and designs, and especially selected and gathered from caves, deserts, mountains and other places throughout the United States, Canada and Old Mexico; that the defendant has on hand a car load of opalized petrified wood; that all said materials were especially selected and gathered for this particular purpose and that up to the time this action was begun the defendant has expended in time, labor and materials a sum aggregating approximately $35,000; that at all times during the construction of the shrine the design and construction were in accordance with the understanding and agreement of the parties and that in January 1933, after full discussion between plaintiff and defendant a written agreement was prepared by the parties without the aid of legal counsel by which the parties attempted to put in writing the arrangement between them to protect the rights of both parties in reference to the maintenance of the shrine and the continuance of the construction. Defendant further alleges, through mutual mistake and inadvertence, paragraph 6 of said contract failed to include the words ''during the lifetime of W. H. Lightner, party of the second part.'' Defendant further alleges in his cross-petition that he spent time and made the expenditures in the erection of the shrine in reliance upon the agreement and understanding he had with the plaintiff, that the real estate described in the contract would not be alienated or encumbered without the consent of the defendant and that he made the expenditures and erected the shrine believing that the said agreement would be carried out; that at all times during the construction of the shrine and the expenditures of large sums of money by the defendant, the plaintiff and its officers and directors cooperated with the defendant in suggestions as to design and location of the shrine and knew that the defendant was relying on oral and written agreements in doing said work. That plaintiff accepted said construction so far as it was completed and collected nominal sums as admission fees to the shrine for the purpose of maintaining said shrine.

The defendant further avers that the construction of the shrine upon the premises of the plaintiff with the consent and approval of the plaintiff entitles him to an equitable lien upon the property in the sum of $35,000 as against the claim of the

plaintiff that the title to the property should be quieted, free and clear of any claims or rights of the defendant.

The defendant prays, ''Wherefore, This defendant prays that a decree be entered protecting the rights of this defendant to maintain and construct said shrine on the premises of the plaintiff aforesaid, and that the plaintiff be perpetually enjoined from interfering with said shrine or the further construction thereof by this defendant according to the terms of the written contract between plaintiff and defendant, and in the event that the court finds that the agreement between plaintiff and defendant, as written, is void in so far as it attempts to prevent the plaintiff from selling, conveying or mortgaging the premises described in said agreement because in violation of the rule against perpetuities that the said contract be reformed in accordance with the understanding and agreement of the parties to read 'that the property can only be sold, conveyed or mortgaged by the plaintiff during the lifetime of the defendant with his written consent or permission, or in the alternative that an equitable lien be established in favor of the defendant against the premises of the plaintiff described in paragraph 2 of plaintiff's petition, in the sum of $35,000, or such amount as it would appear in the trial of this cause that the defendant has expended in the erection of said shrine, and for the costs of this action, and for such other and further equitable relief as the defendant may be entitled to and in conformity with the averments set forth herein.' ''

The plaintiff moved to strike or dismiss defendant's second amended and substituted answer and cross-petition.

The trial court has sustained plaintiff's motion to dismiss defendant's answer and counterclaim and first amended and substituted answer and cross-petition. The motion to strike was on the following grounds:

(1) That paragraph six of the written contract providing that the plaintiff is ''to not sell, grant, devise, convey and/or cause the premises upon which the work is situated to become mortgaged without the approval in writing of the party of the second part'' is contrary to public policy and to the statutes of this State, and as such clause is the only provision in said contract under which the defendant claims or could claim any rights adverse to plaintiff, the plaintiff is entitled to have its title to

the real estate quieted and established as against the adverse claims asserted by the defendant.

(2) That under the allegations of plaintiff's petition and the admissions and allegations of defendant's answer the contract is without consideration and is wanting in mutuality.

(3) That neither the said contract, Exhibit A, nor any of the alleged transactions averred in the answer creates any right in the defendant to any interest in the real estate described in plaintiff's petition, or constitutes any legal basis for finding any restriction or restraint upon the exercise by the plaintiff of all rights of fee ownership of said realty.

(4) That the facts set out in defendant's cross-petition do not constitute an estoppel preventing the plaintiff from pleading the invalidity of the contract.

(5) That the defendant's claim to a reformation of the contract is only asked in the event that the agreement as written is void and that the claim for reformation is not sustained by competent allegations and furthermore that the additional words sought to be added to the instrument if added to the provision as written would still constitute a restriction on alienation, void, and of no legal force or effect.

(6) That under the facts pleaded in the cross-petition the petitioner is not entitled to any relief consequent upon the finding that the contract is void in attempting to place restraints upon the right of plaintiff to convey or mortgage the real estate and the contract being unenforceable and void does not give rise to or afford any basis for the granting to the cross-petitioner any relief whatever.

The court sustained the motion to strike and dismiss and the defendant elected to stand on the ruling of the court.

The court entered a decree and judgment wherein it was decreed that the plaintiff is the absolute and unqualified owner in fee of the real estate and adjudging that the written agreement was void and of no force or effect and the defendant was adjudged to have no lien, right, claim or interest of any kind in or to the real estate and the defendant was estopped and precluded from asserting any claim under or by virtue of said ·agreement.

The court especially found that the restraint on the right of plaintiff to alienate or encumber the realty attempted to be created by the written contract was violative of public policy

and void. The defendant appealed from the decree and judgment and from all adverse rulings made by the trial court.

The first assignment of error is as follows:

The contract between the plaintiff and defendant was not in violation of the rule against perpetuities, nor was it an illegal restraint upon alienation, and the court was in error in holding that it did not violate such rule. The courts have universally held that agreements or gifts for charitable purposes or uses are not within the provisions of the rule against perpetuities.

This assignment of error refers to paragraph 6 in the written contract which reads as follows:

"Sixth. To not sell, grant, devise, convey and/or cause the premises upon which the work is situated to become mortgaged without the approval, in writing, of the party of the second part."

■■■ While the rule against perpetuities and the rules of law prohibiting restriction upon the alienation of property are distinct and separate their object is the same and are founded on the public policy which prevents property being taken out of commerce or held so that it cannot be conveyed. The rule against perpetuities is concerned with the vesting of estates and the rule on alienation of property is concerned with the limitations that may be imposed upon the enjoyment of property. 48 C. J., 935; Colonial Trust Co. v. Brown, 105 Conn. 261, 135 A. 555. The rule applicable to the situation here is the rule prohibiting restraint on alienation of property.

■■■ In this state a restraint against alienation in a conveyance of a vested estate in fee simple is void and this is true though the restraint is for a limited or particular time. McCleary v. Ellis, 54 Iowa 311, 6 N. W. 571, 37 Am. Rep. 205; Davidson v. Auwerda, 192 Iowa 1338, 186 N. W. 406; Goodman v. Andrews, 203 Iowa 979, 213 N. W. 605. However, gifts to charitable uses do not come within the prohibition of the rule. A charitable gift has been defined to be "a gift to general public use which extends to the poor as well as the rich" and "whatever is given for the love of God or for the love of your neighbor in the catholic and universal sense is a charitable gift." Chapman v. Newell, 146 Iowa 415, 125 N. W. 324, 326; Wilson v. First Nat. Bank, 164 Iowa 402, 145 N. W. 948, Ann. Cas. 1916D, 481. The donation undertaken by the defendant was for a charitable

use. The contention of appellant is that the gift of the grotto and other structures is valid as a gift for a charitable use and therefore the restraint on alienation of the real estate in section 6 of the contract is valid.

The correct rules of law submitted by the appellant are not applicable to the circumstances in this case. The restraints on alienation which have been held valid were contained in a devise of the property by will or a conveyance by deed by a donor for a charitable use and the restraint on alienation was attached to the subject matter of the gift.

A donor of property for a charitable use may impose such conditions as he may choose, including a restraint on alienation. This right is an exception to the prohibition against restraint on alienation:

The real estate which defendant seeks to encumber by the restrictive agreement was not the subject of a gift from him to the appellee. The real estate at the time of the execution of the contract was owned in fee simple by the plaintiff free of any restraint on alienation.

The correct rule is stated in the case of Mills v. Davison, 54 N. J. Eq. 659, 35 A. 1072, 1073, 35 L. R. A. 113, 55 Am. St. Rep. 594. In that case the plaintiff conveyed to Grace Church a building lot and provided in the deed, ''that neither the said party of the second part nor their successors shall at any time sell, mortgage or in any way convey the said land and premises or any part thereof.'' The court in differentiating between the purchase of lands by a corporation created for charitable purposes and a donation or gift of lands to such a corporation for charitable uses states:

''The distinction is between the purchase of lands by a corporation created for charitable purposes, and a donation or gift of lands to such a corporation for uses that are charitable. In Magie v. Evangelical Dutch Church, 13 N. J. Eq. 77, an incorporated religious society purchased lands for a consideration, and procured from the vendor a deed of conveyance in fee, with an habendum to hold for the specific uses for which the society was incorporated, with a restriction against alienation or incumbering. Chancellor Green applied to this conveyance the rule of the common law, that alienation is an inseparable incident of an estate in fee simple, and could not be restrained by any provision or condition whatever, and that, therefore, a mort-

gage by the society was valid. But this decision was expressly placed upon the ground that the trust was not created by devise or gift; that the land was purchased for a valuable consideration, and a church was erected thereon by the funds of a corporation, and the trust was inserted in the deed by the society at its instance, and for its benefit and protection; and that a trust so created will not protect the property against the payment of debts. But he adds: 'Where property is given to a corporation in trust for charitable use, the trust is the creature of the donor. He may impose upon it such character, condition, and qualifications as he may see fit. The property being a gift, no wrong is thereby done to the creditors of the corporation, and a court of equity may well protect and enforce all the conditions of the gift.' * * *

"When the charitable use is created by gift, the donor may impose conditions and limitations which shall prevent the diversion of the trust estate from the uses upon which the estate was granted, either by the voluntary or involuntary act of the donee. Indeed, the inalienability of the trust estate to other purposes than the uses for which it was donated results from the fact that the trust is created. The question is wholly one of construction."

In the case of Magie v. Evangelical Dutch Church, 13 N. J. Eq. 77, referred to and quoted in the case of Mills v. Davison, supra, the religious corporation purchased the land for $1,000. The deed was an absolute conveyance in fee upon the condition or trust, among other things, that it shall be held as an Evangelical Church forever and "shall not be alienated or encumbered". The court, after holding that the provisions of the trust providing for restraint on alienation were inserted by the corporation at its instance and that the effect was a trust of their *own creation* under which it agreed not to alienate or encumber the real estate, said:

"An unlimited power of alienation is an inseparable incident of an estate in fee simple and cannot be restrained by any provision or condition whatever * * *. The trust was not created by *gift* or *devise*. The land was purchased by the corporation for a valuable consideration * * *. The inquiry then results in this, may the trustees of a religious association * * * purchase and hold real estate under a trust *of their own creation* which

shall protect their property from reach of creditors? * * * So far as this deed by means of trusts contained in it dedicates the property to the exclusive enjoyment of the religious society for whose use it was designed and limits and regulates the terms of that enjoyment, the trusts will be protected and enforced by the court. The corporators had a clear right to specify (in the deed) the purposes to which the property should be dedicated and the use to which it should be appropriated, but the attempt to restrain the powers of alienation for the necessary uses of the corporation is illegal and the condition imposing such restraint is inoperative and void.''

In this case, the plaintiff, as in the Magie case, attempted to separate from its fee simple title an inseparable incident of an estate in fee simple, that is, the unlimited power of alienation.

The rule is given in 21 R. C. L., 328, section 62, as follows:

''Charities form an exceptional class in reference to the rule against restraints on alienation and conditions in restraint of alienation may be inserted in devises to charity because it is a normal characteristic of property devoted to charitable purposes that it is inalienable. Hence a gift to a charitable use, with a direction that no part of it should at any time be alienated, does not create a perpetuity in the sense forbidden by law, but only a perpetuity allowed by law and equity in cases of charitable trusts.''

A gift or devise of real estate with a provision that it shall not be alienated does not create a perpetuity forbidden by law but is a perpetuity permitted both in equity and law if it is for a charitable purpose. Perin v. Carey, 24 How. 465, 16 L. Ed. 701.

If the defendant in this case had conveyed the land in question to the plaintiff by gift for a charitable use and imposed a restraint against alienation of the real estate it would have been valid. That part of the contract, section 6, under which the plaintiff agreed not to sell, convey, or encumber the premises without the approval of the party of the second part, not coming within the exception to the rule against restraints on alienation, was void and violated the public policy of the state.

 The corporation through its officers did not have the power to impose on the title a restraint on alienation because of its contravention of public policy and this provision of the con-

tract cannot be validated by ratification or estoppel. 14a C. J. 309.

The trial court was right in holding that the restraint on the right of plaintiff to alienate or encumber the realty was violative of public policy and void and that plaintiff was the absolute and unqualified owner in fee of the property free of the limitation attempted to be imposed by section 6 of the contract.

██ II. The court went further in its decree and adjudged that the defendant was estopped and precluded from asserting any claims under or by virtue of the contract. We conclude the court erred in so holding.

The appellant claims that he has a license from the plaintiff which the plaintiff cannot revoke at this time.

A license is an authority or permission to do a particular act or series of acts upon the land of another without possessing any interest or estate in such land.

The defendant urges in his answer that with the full knowledge and consent and cooperation of the plaintiff he went upon the property of the plaintiff and constructed a shrine, arches, walls, lagoon and other constructions and that he incurred an expense of $35,000 for the materials and labor relative to the project. The results of the project were, in part at least, beneficial to the plaintiff. The money was spent in reliance on the license and while the general rule is that a mere license may be revoked at the pleasure of the licensor, if the licensee has expended money or its equivalent of labor the rule is different, and the license is regarded in equity as an executed contract, the revocation of which would be a fraud on the licensee and the licensor is estopped from revoking it and the rights under the license continue until its purpose is accomplished. 37 C. J., 292, section 195; 17 R. C. L., 90; Rehmann v. City of Des Moines, 200 Iowa 286, 204 N. W. 267, 40 A. L. R. 922; Ruthven v. Farmers Cooperative Creamery Co., 140 Iowa 570, 118 N. W. 915; Green v. Crain, 185 Iowa 1086, 171 N. W. 574; Cook v. Chicago, B. & Q. Ry. Co., 40 Iowa 451. The defendant, under this license, has the personal privilege of going on the land and completing his undertaking. It is conceded that defendant performed work on the project subsequent to January 1933, and defendant claims that he worked on the project about the time this suit was brought and further claims that he is ready and willing to complete the development.

**█ █ █** The appellee in attempting to uphold the decree of the court that the defendant had no rights of any kind or nature under the contract, urges that the contract was without consideration and was lacking in mutuality. We cannot concur with appellee in this contention. On this appeal the parties assume that the terms of the oral contract entered into sometime prior to 1927 were substantially the same as the terms of the written contract. Under this contract the defendant "undertook" with the approval of the plaintiff to design and construct a grotto with all its component parts. The word "undertake" means to lay one's self under obligation or to contract. The contract among other things provided that "it being understood that the grotto and all its component parts thus far developed or erected and such as may be developed or erected by the party of the second part is a donation on the part of the party of the second part as an act of thanksgiving for the faith that God has given to the party of the second part and to assist the Sisters of Mercy in their good works."

The contract also provided "the party of the first part in consideration of the sacrifices and donation of the party of the second part hereby agrees to be forever bound to the following conditions." Then follows the promises of the appellee. The consideration named for these promises is the sacrifices and donations of the party of the second part. The sacrifices of appellant consist of the labor and money spent by him on the undertaking and to be expended. The donation means that part of the project completed at the time of the contract and also the completion of the project. The acts done and to be performed by the defendant were for the benefit, in part at least, of the plaintiff who accepted the donation and enjoyed the benefits. There were mutual undertakings of the parties. Clearly there was a consideration for the promises and obligations of the plaintiff. See Fishbaugh v. Spunaugle, 118 Iowa 337, 92 N. W. 58; Lange v. Nissen, 208 Iowa 211, 225 N. W. 266; Downey v. Gifford, 206 Iowa 848, at page 858, 218 N. W. 488.

The question of mutuality was raised in Meader v. Incorporated Town of Sibley, 197 Iowa 945, 198 N. W. 72, 74, in which case we stated:

"It is a well established rule that, if the intention of the parties and the consideration upon which an obligation is as-

sumed by one party is that there shall be a corresponding obligation on the part of the other party, the law will imply such obligation.''

In this case the intention of the parties that there would be corresponding obligations is not left to implication. Such intention is expressed. This contract was not lacking in mutuality.

■■■ The illegality of the provision in the contract restraining alienation did not vitiate the entire contract. The purpose and object of the contract was not only legal, but highly commendable. Where an agreement contains two or more promises or obligations, one of which is against public policy and the other promises are not, the illegality of one of the obligations will not relieve the promisor from liability on his valid promises. The valid parts of the obligation of the appellee are separable from the bad part. See Livingston v. Railway Co., 142 Iowa 404, 120 N. W. 1040; Casady v. Woodbury County, 13 Iowa 113; Osgood v. Bauder & Co., 75 Iowa 550, 39 N. W. 887, 1 L. R. A. 655; Baird v. Boehner, 77 Iowa 622, 42 N. W. 454; Stewart v. Pierce, 116 Iowa 733, 89 N. W. 234.

■■■ It is our conclusion that section 6 of the contract is void and the other provisions of the contract are valid. The exhibits attached to the pleadings reveal impressive and beautiful structures completed by defendant under the contract. The work involved is, from the very nature of the undertaking, slow and painstaking. No time for the completion of the project was fixed in the contract and the defendant had a reasonable time for performance.

The allegations in the pleadings of the defendant reveal that he has the personal privilege, not only as a licensee but also under the contract, of completing the undertaking on the real estate described in the contract within a reasonable time. The written contract describes the real estate on which the grotto and other structures are to be constructed.

Though we have held section 6 of the contract invalid, that defendant may complete the structure with confidence that the plaintiff will continue to use the property for religious and school purposes is indicated by the following excerpt from his brief and argument.

''There is no indication of any kind that the plaintiff expects to deed the property or divert it to any other use than for

religious purposes. The Sisters themselves, in charge of the plaintiff corporation at the time the agreement was made, felt the shrine and contract were entirely in harmony with the avowed purpose and use of the land they then contemplated. In other words, it was a tract that is now and always will be dedicated to religious use, schools and a Sisters' Home.''

Because of the conclusion we have reached, it is unnecessary for us to consider defendant's claim of an equitable lien upon the property.

■■■ The defendant-appellant is not entitled to a reformation of the contract as prayed for the reason that a restraint against alienation is void though for a limited or particular time.

The trial court erred in sustaining plaintiff's motion to dismiss defendant's second amended and substituted answer and cross-petition.

That part of the judgment appealed from which holds that the restraint on the right of the plaintiff to alienate or encumber the realty attempted to be created by paragraph 6 of the contract is violative of public policy and void and quieting the title to the real estate in the plaintiff as against that provision of the contract is affirmed.

That part of the judgment and decree holding that the entire contract was void and of no force and effect and that the defendant had no right, title or interest of any kind under or by virtue of said agreement and the ruling of the trial court sustaining plaintiff's motion to dismiss are reversed. (All italics ours.) Affirmed in part; reversed in part and remanded.

ᵘ PARSONS, SAGER, ANDERSON, HAMILTON, DONEGAN, KINT-ZINGER, and MITCHELL, JJ., concur.