394 P.2d 612

**Ruth Jensen PAGE and Ruth Jensen Page, as guardian of the Estate and person of Ane Kirstine Page, a minor, Plaintiff and Respondent,**

**v.**

**Meredith PAGE and Maurine S. Page, Defendants and Appellants.**

**No. 10044.**

Supreme Court of Utah.

Aug. 6, 1964.

Wade, J., and Henriod, C. J., dissented.

Dahl & Sagers, Midvale, for appellant.

Pugsley, Hayes, Rampton & Watkiss, Salt Lake City, for respondent.

4. Bowman v. White, 13 Utah 2d 173, 369 P.2d 962 (1962).

CALLISTER, Justice.

This is an appeal from a summary judgment that declared void on grounds of public policy a provision in a decree of distribution that restrained the plaintiff from alienating certain real property without the consent of the appellants.

Alma Meredith Page, a son of appellants, died intestate in 1956; surviving him were his wife and minor daughter, Ruth Jensen Page and Ane Kirstine Page. His estate consisted of the real property which is the subject of this litigation and which he was purchasing under a uniform real estate contract. At the time of his death there were in effect on his life several life insurance policies which designated his parents as beneficiaries. There was a dispute between the parents and the wife as to whether the proceeds, which amounted to $20,000, belonged solely to the parents or were subject to a trust in favor of the surviving wife and child. The parties entered into a stipulation whereby it was agreed that of this $20,000 in dispute, the parents (defendants) would take $11,000 and would permit $9,000 thereof to be used to pay the balance on the real estate contract and some other debts of plaintiff. The widow agreed that she would not, either in her own right or as guardian of her minor child, sell or mortgage the real property without the consent of decedent's parents until her daughter should either have reached the age of 21 years or until one year after her daughter married, whichever was sooner. This agreement was approved by the probate court, and the provision was incorporated in the decree of distribution.

The respondent commenced the present action to avoid the effects of the above provision, and the trial court granted her motion for summary judgment, which vitiated the provision. The court held that the agreement requiring appellants' consent constituted a restraint on alienation of the property and was void as being against public policy, and therefore, the provision in the decree incorporating such a restriction was void on its face.

It is undisputed by the parties that the plaintiff owned the land in fee simple; neither is there a contention that the defendants owned any interest in the land by way of either legal title or security interest, nor that any trust or option to repurchase was involved.

The appellants contend that a restriction on alienation of property for a limited period of time entered into by an agreement is not void as being against public policy.

First and foremost, this provision was repugnant to the nature of a fee simple, for one of its essential incidents is the power to alienate. This provision was a disabling restraint in form (in contrast to a forfeiture provision). Section 26.24 of

the American Law of Property, Vol. VI, states:

"A disabling restraint upon a fee simple in land, * * * though limited in time, is now everywhere invalid, with the possible exception of the states of Indiana and Nebraska, where the law is doubtful."

Within an exhaustive annotation in 42 A.L.R.2d the general rule is summarized as follows:

"* * * one who owns land by legal title in fee cannot by any provision of the instrument of conveyance to him, nor by provisions of a later instrument (unless indirectly as the effect of a contract of sale, option, etc.) be restrained from alienating the property even for a limited time, whether by language of naked prohibition or by a condition or a limitation over in case of alienation made." [1]

"The rule which prevails in most jurisdictions of this country * * * and which continues to gain acceptance, is that the ownership of land by legal title in fee carries with it as an incident of the estate the right to sell, mortgage, or alienate the property at any time; consequently, * * * any provision of an instrument of conveyance or of any later instrument which purports to prohibit or restrain the conveyee or owner in fee from alienating the property or to withhold from him the right or power to alienate, whether for the entire period of his life or for some lesser time, is void. The ground usually assigned for the rule is that the restraint is repugnant to the fee; in the last analysis this may be no more than a mode of expressing the established public policy." [2]

Section 8 of the annotation (42 A.L.R. 2d) is specifically addressed to the problem of the instant case; the pertinent provisions are as follows:

"(a) [p. 1302] In general * * * provisions in any form against the alienation of land by the legal owner in fee without the consent or joinder of some other person designated are void.

"(b) [p. 1303] The rule invalidating restraints applies in the case of a contract provision purporting to bind a fee owner without consent."

In Section 8(c) pp. 1305–6, there is a statement that only a few cases have dealt with conditions against alienation without consent, and that Alabama, Kentucky, and Ontario have upheld these particular restraints. It is particularly noteworthy that those instances in which a restraint was upheld it was to protect an interest in the premises vested in the person who was to

---

1. Section 6, p. 1290.

2. 42 A.L.R.2d Section 2, p. 1247.

give the consent and involved a forfeiture provision.

The annotation further cites cases from Michigan, Iowa and Florida where it was held that a provision whereby the fee holder would not sell, grant, devise, convey, or cause the premises to become mortgaged without consent was void under the general rule that a restraint, even for a limited time, against alienation of a fee simple estate is void. This type of condition has been declared void despite the fact that it was included for security in respect of money to be paid,[3] or to protect valuable improvements erected upon the land,[4] or to protect the holder of a second mortgage.[5]

The trial court is affirmed; costs are awarded to plaintiff.

McDONOUGH and CROCKETT, JJ., concur.

WADE, Justice (Dissenting).

I dissent: In my opinion the pleadings shown by the record present issues of fact which if decided in favor of the deceased's parents would clearly indicate that neither such agreement nor the decree of the probate court are void as against public policy, but constitute a reasonable restriction un-

der the circumstances claimed which we should hold valid.

I call attention to a statement by Justice Holmes sometimes quoted by Mr. Justice Crockett:

"It is revolting to have no better reason for a rule than that it was so laid down in the time of Henry IV. It is still more revolting if the ground upon which it was laid down has vanished long since, and the rule simply persists from blind imitation of the past."[1]

I also think that this court should use caution in adopting either a new or old rule which under the facts shown has the effect of avoiding a contract which has been adopted by a court decree where the facts show a reasonable basis for such contract.

I agree with the following statements taken from the Annotation relied upon by the prevailing opinion in 42 A.L.R.2d 1255:

" * * * that the restraint is good if reasonable, or if to continue merely for a 'limited' or a 'particular' time, * * *"

Also in 42 A.L.R.2d 1258, where it is said:

"There seems to be nothing in the basic decisions (looking as well to

3. Campau v. Chene, 1 Mich. 400 (1850).
4. Sisters of Mercy v. Lightner, 223 Iowa 1049, 274 N.W. 86 (1937).
5. Davis v. Geyer, 151 Fla. 362, 90 S.W.2d 727 (1942).

1. Oliver Wendell Holmes, The Path of the Law, 10 Harvard Law Rev. 457, 469, as quoted in Snyder v. Clune, 15 Utah 2d 254, 390 P.2d 915.

contract cases generally, as to those falling within this annotation because dealing specifically with the question of the validity of express restraints) which, rightly understood, would deny validity to a suitably limited provision restraining alienation of a fee where imposed in reasonable protection of some interest in the premises retained by a conveyor or in any way vested in someone other than the person restrained. In fact there are various cases which by ruling or language, or on their facts or by fair implication, support this position, though not always by clear segregation of the question or well-articulated doctrine. It is quite evident that the occasional inclination, even outside of Indiana and Kentucky, to uphold certain limited restraints as being 'reasonable' is in large measure traceable to instances in which the restraints were reasonably needed and were imposed in protection of interests in the premises retained or vested in some person other than the conveyee or general owner * * * "

Also in 42 A.L.R.2d page 1305, it is further stated:

"Restraining provisions suitably limited in reasonable protection of some interest in the premises retained by a conveyor or vested in one other than the person restrained are frequently regarded as valid."

The foregoing quotations are in accord with our holding in Kamas State Bank v. Bourgeois.[2]

Here we have an unusual fact situation. The appellants, who are the parents of the deceased, had no interest in the land in question. The deceased was purchasing such land under a contract in his name only, on which a balance of more than $7,000 was still owing. There was also in effect on the life of the deceased, with his parents as beneficiaries, life insurance policies of about $20,000. A dispute arose between his widow and his parents as to who owned these life insurance policies. This dispute was settled by an agreement whereby the parents agreed to pay to balance owing on the real estate contract of approximately $8,000, but the entire sum was not to exceed $9,000. This agreement ended with the following provision:

"Subject to the provisions that said property may not be conveyed away by the distributees hereunder without the consent of Meredith Page and Maurine S. Page until such time as Ane Kirstine Page shall have reached the age of 21 years or until one year after Ane Kirstine Page shall marry, whichever is sooner."

2. Kamas State Bank of Bougeois, 14 Utah 2d 188, 380 P.2d 931.

This agreement was approved by the probate court and made a part of the decree of distribution. By her complaint the mother seeks to avoid the effect of that agreement because she was unable to keep the property up. She further claimed that deceased's parents offered to buy the property for $10,000, whereas it was actually worth more than $20,000. She claimed that such an offer constitutes a consent to the sale. The deceased's parents, appellants here, deny that they made any such offer to purchase the property. The court granted plaintiff's motion for a summary judgment thereby vitiating this contract and the provision of the decree of distribution. It held that such restrictions on alienation is void on its face and subject to collateral attack. I am of the opinion that the decree of distribution is not subject to collateral attack and may not be attacked directly after the expiration of six years without any appeal or complaint thereon.

Of course, if on a trial of the facts the trial court were to conclude that the appellants, decedent's parents, did in fact consent to the sale by the widow as she claims, but thereafter attempted to require that the sale be made to them for $10,000 only, then such a restraint would be void and contrary to the agreement and public policy.

But under the facts as claimed by the appellants, there being nothing in the agreement which indicates that the restrictions were imposed to benefit the appellants, deceased's parents, but all the restrictions seem to indicate a purpose and intention to protect the granddaughter of the appellants, if on a trial of the issues of fact presented the court were to find that such were the facts I think the restriction would under such facts not be unreasonable or void, and that the court should grant a rehearing to determine those facts.

Here the evidence indicates that the mother and grandparents negotiated a settlement. Under this settlement as negotiated the deceased's parents advanced for the protection of their son's widow and daughter some $9,000 to purchase the farm and pay other debts. I think that such an agreement made for the purpose and with the intent of protecting the granddaughter's interest in the property is not unreasonable. So I would send the case back for a trial of these issues.

HENRIOD, Chief Justice.

I concur in the result reached by Mr. Justice WADE in his dissent.

I think there is considerable merit in what he says to the effect that under the facts of this particular case, where blood kinfolk obviously are doing the best they can to protect a little girl's future security, the restriction against alienation, as a public policy represents, perhaps, an irresistible force meeting an immovable object that equally has roots in public policy. Reflecting on the two, and in view of the comparatively short-lived restriction here, I am inclined to the conclusion that the former

should yield to the latter. Were this a case where a grantor imposed the restriction on the grantee, in an ordinary situation divorced from the facts of this case, I am inclined to bear with the majority.

Irrespective of my strong sympathy with Mr. Justice Wade's studied conclusion, based principally on inapplicability of the rule against such alienation, I am convinced that the trial court should have dismissed the complaint for two separate reasons touched upon, at least, in Mr. Justice Wade's dissent:

1) The matter was res judicata, and the action was a collateral attack on a probate decree that was entered in a different division of the court by a different judge, six years before, *at the behest and request* of this very plaintiff.

2) The parties to the transaction were not in privity with respect to the title to the property.

As to 1): The probate court had jurisdiction of the subject matter and all the parties before it. They *all* agreed to and urged the court to enter the decree of distribution, which in clear and unmistakable terms carried out their stipulated wishes. Obviously it was designed to protect the little girl,—no one else. It was consonant with a strong public policy to do this, the policy against restraint, against alienation to the contrary notwithstanding. I cannot subscribe to the argument that the contract, being void because of a restraint against alienation feature, was void from the beginning and consequently the court had no jurisdiction to hear it. Some court first has to determine its invalidity and certainly has jurisdiction to do *that*. Should this court reverse a trial court that announces that it has no jurisdiction because of invalidity ex contractu, what happens to the case? Surely we then say there *was* jurisdiction. What I am trying to convey is a conclusion that in determining such a matter where there has been a former probate decree, any attack thereon is collateral if launched in an independent action, unconnected with the probate case, its file, its number, etc. previously decided I think attacking the first decree in a second and different case, ordinarily is an unpermitted collateral attack. This should be apparent in this case when every member of the court knows that probate matters are filed in the Probate Division of the District Court, and is assigned a number in chronological order that is entirely foreign to the ordinary case in matters of torts, quiet title, foreclosures, divorces and the like. Special clerks are assigned to probate only. If someone wishes to attack a probate decree it should be done in the Probate Division, and directed to the alleged offensive decree of distribution, in the case where the decree was entered. Otherwise there would be no reason to complain about an independent action brought in Daggett County, for example, to attack an erstwhile valid probate decree entered in Kane County, by a judge

that never has or will sit in Kane County. The whole thing would lead to indecision, would provide an easy vehicle to destroy a decree entered many years before in a different court and county. And it is no answer to say that the first case happened in the same judicial district as that employed by the second.

As to 2): I have checked the citations in the main opinion, and with possibly rare exception, they deal with a grantor-grantee relation. The restriction inured to the benefit of the grantor or someone else, who having an interest of some kind in the fee, divested himself of that interest, but attempted to place a barnacle on a ship carrying title on its voyage. This of course, the rule strikes down. But that is not the case here. The defendants never had an interest in the property. There was no privity of title or with respect to its hypothecation. This simply is a case where grandparents, for a consideration, said if you won't sell the property until our granddaughter reaches 21 or marries, we will pay you $9,-000.

This case is not much different than a 20-year option to buy, exercisable only at the 20th year. As a practical matter, which I take it, has something to do with public policy, the optionor would have a rough time selling the property during that 20-year period. Cases seem to distinguish such a case but it strikes me as being a case where you measure the length of hair on a caterpillar.

A mortgage note that calls for payment *only* at the 20th year is about the same with respect to alienation, with a similar refinement in some cases.

An irrevocable trust containing a provision against alienation by the trustee for 20 years, obviously designed to protect children, is in the same boat, with cases similarly sustaining them where the grantor completely and irrevocably has divested himself of the fee.

I could go along with these distinctions as practical conclusions based on other public policy justifying them in a highly complex world, making them exceptions to the rule against restraint on alienation, as are the 32 exceptions to the hearsay rule, and still espouse the rule itself. I have difficulty, however, in determining why, if I am a party not vested with any interest in property, I could not agree to pay a substantial sum to my neighbor if he would refrain from selling his property for a reasonable time until I could readjust my own property interest, anticipating the possibility of my neighbor's conveyance that would result in ruining my home.

I think the authorities cited in the main opinion and the reasons ascribed are inapropos in this particular case and the case should be returned for dismissal.