Stanley Martin REDD, Sheila M. Redd, his wife; Sterling Hardson Redd, Jill D. Redd, his wife; Paul Dutson and Donna R. Dutson, his wife, Plaintiffs and Appellants,

v.

WESTERN SAVINGS & LOAN COMPANY, Defendant and Respondent.

No. 17231.

Supreme Court of Utah.

May 21, 1982.

Neil R. Sabin, Salt Lake City, for plaintiffs and appellants.

Richard W. Giauque, James R. Holbrook, Stephen T. Hard, Salt Lake City, for defendant and respondent.

HOWE, Justice:

Plaintiffs, Stanley Martin Redd and Sheila M. Redd, his wife; Sterling Hardson Redd and Jill D. Redd, his wife; Paul Dutson and Donna R. Dutson, his wife, who are the trustors in a trust deed, brought this action for declaratory relief, for damages, and for an injunction against the defendant beneficiary, Western Savings & Loan Company, which had begun foreclosure proceedings pursuant to a "due-on-sale" clause contained in the trust deed. The trial court rejected the plaintiffs' motion for an injunction and granted summary judgment in favor of the defendant. Plaintiffs appeal.

On November 18, 1976 the plaintiffs borrowed $108,000 from the defendant at 9¾% interest per annum to finance the purchase of a 24-unit apartment building. Plaintiffs executed to the defendant a trust deed note secured by a trust deed on the property. The note contained provision for acceleration of the principal amount in the event of default in the payment of the monthly installments or in the performance of any agreement in the trust deed. Paragraphs 29 and 30 of the deed of trust contained provisions requiring the borrowers to notify the lender of any sale or further encumbrance of the property, and requiring immediate payment of all remaining indebtedness at the election of the lender. Should lender not so elect, and the purchaser assumed the indebtedness, defendant was given the right to increase the rate of interest.

Concurrent with the execution of the trust deed note and trust deed, the plaintiffs also executed a document which specifically directed their attention to the acceleration provisions contained in paragraphs 29 and 30 of the trust deed.

Approximately three years later, plaintiffs entered into an installment contract for the sale of the property whereby they would remain the obligors under the trust deed note and would continue to be responsible for making payments to the defendant Western Savings & Loan Company through an escrow account set up for that purpose. Title to the property was not to pass until the purchasers had made all required payments to the plaintiffs.

When the defendant Western Savings discovered that the monthly payments were being received from an escrow service company, it investigated and found that the property had been sold. It requested the plaintiffs to have their buyer make application with defendant to assume the loan at an increased interest rate. When the plaintiffs refused to comply with these demands, the defendant recorded a Notice of Default on March 9, 1980 and commenced non-judicial foreclosure proceedings based on the violation of the due-on-sale provisions contained in the trust deed.

The plaintiffs have made timely payment of all installments and the defendant has not alleged any default therein. Since February 1980 the defendant has returned all payments tendered by plaintiffs to avoid any waiver of its contractual rights. Plaintiffs are currently depositing the returned payments in a savings account which has been assigned to the defendant.

In response to the defendant's foreclosure proceedings the plaintiffs filed this action praying for an injunction against the foreclosure, for damages, and for a declaration that the due-on-sale clause in the trust deed was unenforceable. Plaintiffs moved for a preliminary injunction and defendant moved to dismiss the action. The trial court treated defendant's motion as a motion for summary judgment since supportive materials were presented which were outside the pleadings and were not excluded. Rule 12(b), Utah Rules of Civil Procedure. *Harvey v. Sanders*, Utah, 534 P.2d 905 (1975). The trial court was presented with the undisputed evidence showing the existence of the due-on-sale clause, the sale of the property to third persons and the failure of the trustors to notify the defendant of the sale. Based on these facts and other matters outside the pleadings, the trial court granted defendant's motion and determined that the defendant was entitled

to judgment as a matter of law because the due-on-sale clause did not constitute an unreasonable restraint on the plaintiffs' right to alienate their property. Whether the trial court was correct in that determination is the sole question before us.

In *Page v. Page*, 15 Utah 2d 432, 394 P.2d 612 (1964), this Court expressed a strong preference for the free alienability of property. We quoted with approval the following from an annotation at 42 A.L.R.2d, § 2, p. 1247:

> ... any provision of an instrument of conveyance or of any later instrument which purports to prohibit or restrain the conveyee or owner in fee from alienating the property or to withhold from him the right or power to alienate ... is void. [Footnotes omitted.]

In *Pride Oil Co. v. Salt Lake County*, 13 Utah 2d 183, 370 P.2d 355 (1962), we held that the right to own and enjoy property includes the right to sell it. And in *Ritholz v. City of Salt Lake*, 3 Utah 2d 385, 284 P.2d 702 (1955), we stated:

> Clearly among the rights attendant upon ownership and enjoyment of property are the rights to exchange, pledge, sell or otherwise dispose of it—rights which must be adequately protected.

3 Utah 2d at 389, 284 P.2d at 705.

In determining what restraints are invalid, some writers and scholars have declared that all direct restraints on alienation are invalid unless they fall within certain recognized categories of exceptions. *Malouff v. Midland Fed. S. & L.*, 180 Colo. 294, 509 P.2d 1240 (1973). It was this view which was apparently accepted by the majority of this Court in *Page v. Page*, supra.

Defendant points out that a due-on-sale clause does not constitute a restraint on alienation as defined by § 404 of the Restatement of the Law of Property[1] and cites *Occidental Savings & Loan v. Venco*, 206 Neb. 469, 293 N.W.2d 843 (1980) in support thereof. Defendant argues that the due-on-sale clause merely affects the amount of money the seller may be able to get for his property, but does not restrain in any manner the actual transfer of the property. Some courts have accepted that view. *Miller v. Pac. First Fed. S. & L.*, 86 Wash.2d 401, 545 P.2d 546 (1976); *Gunther v. White*, Tenn., 489 S.W.2d 529 (1973). Plaintiffs counter that such view is unsound in at least one situation, viz., where interest rates or the transactional costs of obtaining a loan have risen to a point where few would-be purchasers could qualify for a loan, and the original lender is unwilling to allow the new buyer to assume the outstanding indebtedness and elects to enforce the due-on-sale clause, the transfer of the property could well be effectively prohibited since the amount of down payment the new buyer tenders may not be adequate to discharge the underlying mortgage. Furthermore, plaintiffs argue, even if the lender is willing to allow the new buyer to assume the underlying debt but increases the interest rate for the privilege to assume, that increase may prevent the sale. For a discussion of this point see *Tucker v. Lassen S. & L. Assoc.*, 12 Cal.3d 629, 116 Cal.Rptr. 633, 526 P.2d 1169 (1974) discussed infra; *Wellenkamp v. Bank of America*, 21 Cal.3d 943, 148 Cal.Rptr. 379, 582 P.2d 970 (1978), and authorities cited therein. One author has stated:

> Although written as an acceleration clause the due on sale clause directly and

---

**1.** § 404. Definitions.

(1) A restraint on alienation, as that phrase is used in this Restatement, is an attempt by an otherwise effective conveyance or contract to cause a later conveyance

(a) to be void; or

(b) to impose contractual liability on the one who makes the later conveyance when such liability results from a breach of an agreement not to convey; or

(c) to terminate or subject to termination all or a part of the property interest conveyed.

(2) If a restraint on alienation is of the type described in Subsection (1), Clause (a), it is a disabling restraint.

(3) If a restraint on alienation is of the type described in Subsection (1), Clause (b), it is a promissory restraint.

(4) If a restraint on alienation is of the type described in Subsection (1), Clause (c), it is a forfeiture restraint.

fundamentally burdens a mortgagor's ability to alienate as surely and directly as the classical promissory restraint. As such, the due on sale clause is truly a direct restraint insofar as the category of direct restraints can be articulated.

Volkmer, The Application of the Restraint on Alienation Doctrine to Real Property Security Interests, 58 Iowa L.Rev. 747, 774 (1973). This position is supported by cases from jurisdictions which have held that due-on-sale clauses can operate as restraints on alienation. See, e.g., *Nichols v. Ann Arbor Federal Savings & Loan Assoc.*, 73 Mich.App. 163, 250 N.W.2d 804 (1977); *Patton v. First Federal Savings & Loan Assoc.*, 118 Ariz. 473, 578 P.2d 152 (1978); *Tucker v. Pulaski Federal Savings & Loan Assoc.*, 252 Ark. 849, 481 S.W.2d 725 (1972).

In the instant case, any restraint that there may be is not one of the classical direct restraints such as we were considering in *Page v. Page*, supra and as categorized in § 404 Restatement of the Law of Property[2] as disabling restraints, promissory restraints and forfeiture restraints. We view it as an indirect restraint or a hindrance. *Crockett v. First Federal S. & L.*, 289 N.C. 620, 224 S.E.2d 580 (1976) and *Lipps v. First American Service Corp.*, —— Va. ——, 286 S.E.2d 215 (1982). In those cases the following is quoted approvingly from L. Simes and A. Smith, the Law of Future Interest § 1112, (2d Ed. 1956):

An indirect restraint on alienation arises when an attempt is made to accomplish some purpose other than the restraint of alienability, but with the incidental result that the instrument, if valid, would restrain practical alienability.

Irrespective of whether they have categorized it as a direct restraint or as an indirect restraint, courts generally have upheld and enforced this non-classical type if it is found reasonably necessary to protect a justifiable or legitimate interest of the parties. *Malouff v. Midland Fed. S. & L.*, supra; *Tucker v. Lassen S. & L. Assoc.*, supra. See examples cited by Justice Traynor in *Coast Bank v. Minderhout*, 61 Cal.2d 311, 38 Cal.

Rptr. 505, 392 P.2d 265 (1964). We agree with this approach and believe that the burden of proof should be with the party attacking the restraint.

In recognizing that the acceleration of a debt pursuant to a due-on-sale clause may be an indirect restraint on the borrower's right to alienate his property, we are not unmindful of *Walker Bank & Trust Company v. Neilson*, 26 Utah 2d 383, 490 P.2d 328 (1971). There we held that an acceleration provision is not void as being against public policy. However, acceleration has long been recognized as a harsh remedy and the principles of equity will be applied whenever necessary to prevent oppression and injustice. See *Williamson v. Wanlass*, Utah, 545 P.2d 1145 (1976), and cases cited therein. In that case, the plaintiffs brought suit to enforce an acceleration clause and demanded that the entire balance on an installment note, given as part payment for certain farm property, be paid. In refusing to enforce the acceleration clause the Court stated:

. . . acceleration is a harsh remedy which should be allowed only if there is some reasonable justification for doing so, such as a good faith belief that the prospect of payment is impaired. There was no such showing made in this case.

545 P.2d at 1149. See also *State Bank of Lehi v. Woolsey*, Utah, 565 P.2d 413 (1977).

In the instant case, the defendant made no claim that its loan or security for the loan was in any way impaired by the contract sale of the property. Its only justification was to compensate for an increase in the cost it had to pay for money. Defendant characterizes the question thus presented as follows: "The question before this Court is who will bear the burden of increased interest rates brought on by inflation?"

Whether a lender may legally exercise a due-on-sale clause to maintain its loan portfolio at profitable rates has been considered by many other jurisdictions. They have not been unanimous in their answers. In *Mal-*

2. Set out in Footnote 1.

*ouff v. Midland Federal S. & L. Assoc.,* supra, the Supreme Court of Colorado held that a due-on-sale clause was not an unreasonable restraint on the alienation of real property and that the action of the lender was not unreasonable in imposing a 1% increase in the interest rate (which was halfway between that required by the note and the current interest rate at the time of the sale) on the purchaser of the property assuming the loan as a condition for not invoking the acceleration clause. For other cases to the same effect see *Lipps v. First America Serv. Corp., Va.,* supra; *Mills v. Nashua Fed. S. & L. Assoc.,* 121 N.H. 722, 433 A.2d 1312 (1981); *Dunham v. Ware Sav. Bank,* —— Mass. ——, 423 N.E.2d 998 (1981); *Sonny Arnold, Inc. v. Sentry Sav. Assoc.,* Tex.Civ.App., 615 S.W.2d 333 (1981); *Williams v. First Fed. S. & L.,* 651 F.2d 910 (4th Cir. 1981); *Holiday Acres No. 3 v. Midwest Fed. S. & L.,* Minn., 308 N.W.2d 471 (1981); *Provident Fed. S. & L. v. Realty Centre, Ltd.,* 101 Ill.App.3d 277, 56 Ill.Dec. 851, 428 N.E.2d 170 (1981); *Tierce v. APS Co.,* Ala., 382 So.2d 485 (1980); *Crockett v. First Fed. S. & L.,* supra; *Century Fed. S. & L. v. Van Glahn,* 144 N.J.Super. 48, 364 A.2d 558 (1976); *Miller v. Pac. First Fed. S. & L.,* supra; *Mutual Fed. S. & L. v. Wisconsin Wire Works,* 71 Wis.2d 531, 239 N.W.2d 20 (1976); *Gunther v. White,* supra; 69 A.L.R.3d 713. See also *Great Northern Sav. Co. v. Ingarra,* 66 Ohio St.2d 503, 423 N.E.2d 128 (1981). In *Dunham v. Ware Sav. Bank,* supra, the Supreme Judicial Court of Massachusetts in a recent well considered opinion upheld the validity of a due-on-sale clause, finding it to be a reasonable restraint, if a restraint at all, because (1) the lender's right to accelerate the outstanding debt upon sale of the property and the concomitant right to obtain current interest rates by relending the money is the counterpart of the borrower's right to repay the loan without penalty. Under this reasoning the borrower's ability to profit from falling interest rates supports a like ability on the part of the lender to take advantage of interest rates in its favor; (2) federally chartered lending institutions are allowed to use and enforce due-on-sale clauses and thereby gain a competitive advantage over state chartered institutions which are denied that same privilege; and (3) the clause offers substantial benefits to depositors and future borrowers who are not required to subsidize the continuation of below market rate mortgages. In both *Mills v. Nashau Fed. S. & L.* and *Sonny Arnold, Inc. v. Sentry Sav. Assoc.,* supra, the courts emphasized the right of the lender and borrower to freely contract, finding no public policy considerations which were violated. Most of the cases qualify their holdings with statements that the lender must not be guilty of any unconscionable or inequitable conduct in exercising the due-on-sale clause.

The other line of authority which enforces due-on-sale clauses only to protect the lender's security interest rather than its position in the money market is exemplified by the California cases of *Tucker v. Lassen S. & L. Assoc.,* supra, and *Wellenkamp v. Bank of America,* supra. In *Tucker* the court rejected the argument that a lender's interest in maintaining its portfolio at current interest rates justified the restraint imposed by the exercise of a due-on-sale clause upon the execution of an installment land contract, and held such a clause can be validly enforced only when the lender can demonstrate a threat to one of his legitimate interests sufficient to justify the restraint on alienation inherent in its enforcement. Such legitimate interests were said to include not only that of preserving the security from waste or depreciation, but also that of guarding against what has been termed the "moral risks" of having to resort to the security upon default. The court pointed out that when real property is sold on a land contract the trustor-vendor normally receives a relatively small down payment upon execution of the contract, the remainder to be paid through monthly payments. The amount of the down payment does not often provide the borrower with the means to discharge the balance secured by the trust deed. Said the court:

> The result is that a conveyance by means of an installment land contract would es-

sentially be precluded in all cases wherein the balance due on the trustor-vendor's note was substantial if the "due on" clause were to be given automatic effect. Accordingly, although the trustor-vendor might be willing to accept a rate of interest lower than that currently offered by institutional lenders, the prospective purchaser would be compelled to resort to such lenders to finance the acquisition of the property. The result in terms of a restraint on alienation is clear.

116 Cal.Rptr. at 638, 526 P.2d at 1174. The court also emphasized that in the case of an installment land contract the trustor-vendor retains legal title until he has been paid in full. Thus in the normal case the trustor-vendor, having received a small down payment and retaining legal title, has a considerable interest in maintaining the property until total proceeds under the contract are received, even though he is no longer in actual possession. The court viewed its decision as a logical extension of *LaSala v. American S. & L.*, 5 Cal.3d 864, 97 Cal.Rptr. 849, 489 P.2d 1113 (1971), decided three years earlier when the court had held a due-on-sale clause to be an unreasonable restraint when applied to a junior encumbrance placed upon the property of the trustor-borrower. In that situation, the junior encumbrance does not terminate the borrower's interest in the property and rarely involves a transfer of possession, and often represents only a small fraction of the borrower's equity in the property. It often does not provide the borrower with the means to discharge the balance secured by the trust deed.

Four years after its opinion in *Tucker*, the Supreme Court of California extended the holding of that case to an outright sale of the property as distinguished from a sale on an installment land contract. *Wellenkamp v. Bank of America*, supra. The court recognized that lenders face increasing costs of doing business and must pay increasing amounts to depositors for the use of their funds in making long-term real estate loans as a result of inflation and a competitive money market. But, noted the Court, such economic risks are "neither unforeseeable nor unforeseen" and that "it would be unjust to place the burden of the lender's mistaken economic projections on property owners exercising their right to freely alienate their property through the automatic enforcement of a due-on-sale clause by the lender." Recently, this rule was extended to non-institutional lenders and to investment property. *Dawn Inv. Co. v. Superior Court of Los Angeles County*, 30 Cal.3d 695, 180 Cal.Rptr. 332, 639 P.2d 974 (1982).

Tucker was followed and relied upon extensively by the Court of Appeals of Michigan in *Nichols v. Ann Arbor Fed. S. & L.*, supra, where the borrowers sold the property on an installment land contract. The court held that where the sole basis for enforcement of the due-on-sale clause in the mortgage was the mortgagee's interest in maintaining its portfolio at current interest rates, the restraint on mortgagor's ability to alienate their property was unreasonable. Arizona in *Patton v. First Fed. S. & L. Assoc.*, supra, followed *Tucker v. Lassen*, supra, and refused to enforce a due-on-sale clause unless it could be shown that the lender's security was jeopardized by the contract sale of the property. See also *Silver v. Rochester Sav. Bank*, 73 A.D.2d 81, 424 N.Y.S. 945 (1980).

The California cases have not been followed by other jurisdictions except by Michigan and Arizona in 1977 and in 1978 as pointed out above, and by New Mexico in 1981. *State v. Valley S. & L.*, 97 N.M. 8, 636 P.2d 279 (1981). All other cases decided since that time which we have discovered have aligned with authorities which uphold due-on-sale clauses. We are convinced that the contest between the competing interests, both of which are supported in their positions by valid and logical arguments, is best left to the market place to determine. Both lenders and borrowers have to contend with the problem of inflation which has confronted this country in recent years, and there is no valid reason why the court should interfere with the bargaining process between them wherein the lender seeks to protect itself on a long-term loan against

an uneconomic investment. As pointed out in many of the cases, the due-on-sale clause is not triggered until there is a sale of the property. So long as the original borrower retains the full beneficial interest of the property and remains in possession, his loan is not disturbed although the ravages of inflation have made it highly unprofitable to the lender. It is only when the borrower seeks to sell the property, either on an installment contract or outright, that the lender by its contract is given the right to renegotiate the interest rate. While all have sympathy with anyone who is forced to pay a higher rate of interest, we would be closing our eyes to reality if we ignored the effect of inflation. We fully agree with many of the authorities cited in this opinion that any restraint which the clause imposes, is not an unreasonable restraint. It is bottomed on good and valid reasons and cannot be termed "unreasonable." Reasonableness of restraint is judged by the purpose sought to be obtained. *Baker v. Loves Park S. & L.*, 61 Ill.2d 119, 333 N.E.2d 1 (1975). It is a reasonable restraint justified by legitimate interests of the parties. Lenders must be able to compete with inflation or they will not long remain in existence. It was a proper subject of bargaining between the lender and borrower. That is all the courts are concerned with. We eschew taking sides in a battle of economic forces.

We are in accord with an observation made by the Massachusetts Court in *Dunham v. Ware Sav. Bank*, supra, that the competing policies at issue in this question make it ideally suited to legislative resolution. See § 57–15–1 et seq., Utah Code Ann. 1953. Plaintiffs are left free by this decision to importune that body to treat legislatively the issue in the instant case. In that forum the question can be fully aired and debated and the legislature can weigh considerations that we are not permitted here to do.

We conclude that the trial court properly granted summary judgment. Ruling as we do on the law, there were no factual questions raised by the plaintiffs in their pleadings which would require an evidentiary hearing. Plaintiffs do not contend that the increase in the interest rate sought to be imposed by the defendant exceeded the fair market rate, nor have they plead that the defendant was guilty of any conduct in exercising the due-on-sale clause which might be found to be inequitable or unconscionable. *Williamson v. Wanless*, supra. Defendant, a state chartered institution, has conceded that although the trust deed would allow it to impose a prepayment penalty upon acceleration, it cannot and will not seek such a penalty because of the applicability of 12 C.F.R. § 545.8–3(g)(2) and § 7–7–5.1 and § 7–13–74, U.C.A.1953.

The judgment below is affirmed. No costs awarded.

HALL, C. J., and STEWART and OAKS, JJ., concur.

DURHAM, J., does not participate.