IN RE ESTATE OF MARY E. LEWIS, deceased.

GEORGE R. CARTON, administrator; R. TED LEWIS et al., objectors-appellants; SARAH BENTZEN et al., resisters-appellees.

No. 49088.

(Reported in 80 N.W.2d 347)

JANUARY 15, 1957.

Stuart & Stuart, of Chariton, for objectors-appellants.

Garrett & Bown, of Corydon, and Clare Magree, of Unionville, Missouri, for resisters-appellees.

SMITH, J.—This case grows out of objections to the inventory filed in the pending estate of Mary E. Lewis, deceased. But it involves the provisions of her predeceased husband's will. He died October 14, 1942.

George D. and Mary E. Lewis left no descendants. Their heirs are in unrelated groups. His will (executed in 1917) contained but three paragraphs other than the usual formal opening, and a closing one nominating her executrix without bond:

"First: It is my will and desire that all my just debts and funeral expenses be first paid out of my estate.

"Second: I will, bequeath and devise all the rest and remaining portion of my estate, either personal, mixed or real property, or of whatsoever character it may consist and wheresoever situated, to my beloved wife, Mary E. Lewis, to have and to hold the same forever.

"Third: It is my will and desire that my beloved wife dispose of any and all of the above described property to her and my heirs as by law may be found in such share or shares as she may designate."

Mary E. Lewis, as executrix, filed inventory and final report listing herself as sole beneficiary; applied and was granted relief

from appraisement for and payment of inheritance tax under her $40,000 exemption right; and closed the estate without any objections from any quarter.

She died intestate, January 4, 1954, some eleven years later. The administrator of her estate has inventoried all the property as hers. The heirs of George D. Lewis have filed objections to such listing, contending the property was all derived from and belonged to his estate and passed to them "upon her failure to exercise her power of appointment" under the provisions of his will.

They contend Mr. Lewis' will "construed as a whole" gave her only a life estate but with power of disposal "coupled with a power of appointment, by making a will"; and that by not exercising that power she permitted the property to revert to his estate.

This inaugurated the present controversy. Mrs. Lewis' heirs have filed resistance to those objections and argue the second paragraph of the George D. Lewis will is "an unambiguous devise of a fee simple absolute"; and that paragraph three "is repugnant thereto and legally ineffective."

The trial court overruled the objections and held paragraph three repugnant to "the absolute fee simple title" created by paragraph two "and therefore ineffective." The objectors have appealed. Thus is presented the not unfamiliar spectacle of a property contest between the respective heirs of a childless husband and wife. The case is in probate and not equity. But there is practically no factual dispute.

I.  We have no lingering doubt of the correctness of the final result reached by the trial court, even though there might be difference of opinion as to whether the third paragraph of the will is necessarily repugnant to the second.

The meaning of the language of the second paragraph is clear and explicit. It would be difficult indeed to convey an absolute fee simple title by language more free from doubt.

We cannot regard seriously, though admiring the ingenuity of, appellants' argument, that the use of the word "forever" *created* any uncertainty as to testator's meaning. It may be true that standing alone the word is not a "technical term."

And it is certainly true that absolute title may, under modern usage, be conveyed without its use. Iowa Code 1954, section 557.2.

██ But the phrase "to have and to hold forever" is too clearly associated with the transfer of fee simple title to permit any suggestion of doubt as to its meaning in instruments of conveyance. As used here it constitutes a badge of absolute title. It confirms, rather than questions, the absolute conveyance. In 36 C.J.S. 1251, in defining the word "forever" it is said: "In devises or transfers of land, the word generally imports the creation of an estate in fee simple." And in In re Estate of Hellman, 221 Iowa 552, 555, 266 N.W. 36, 38, we referred to "The old familiar stock phrases of the common law, such as 'in fee simple,' 'absolutely,' and 'to have and to hold forever,' " as being unnecessary in conveyance of absolute title.

Though unnecessary now, its use surely cannot be said to create ambiguity. Any ambiguity in the will must be found in the third paragraph—of which, more later.

██ II. Our decisions make it clear that an unambiguous absolute grant in one paragraph of a will cannot be limited by a separate subsequent repugnant provision.

As said in Todd v. Stewart, 199 Iowa 821, 825, 202 N.W. 844, 845: "But, as has frequently been said, there are some things that even a testator cannot do. It is settled by an unbroken line of decisions that, where a testator gives an absolute title in fee, any attempt in a subsequent clause to defeat, destroy, or limit the title or estate so given, is held to be inconsistent with the disposition so made, and does not affect it."

We find no departure from this doctrine. See In re Estate of Bigham, 227 Iowa 1023, 1026, 290 N.W. 11; In re Estate of McCulloch, 243 Iowa 449, 459, 460, 52 N.W.2d 67; Overturff v. Miller, 247 Iowa 284, 296, 71 N.W.2d 913, 920. In the last cited Overturff decision it is said: "The will devised the sons a fee simple estate in its second paragraph, and the testator could not defeat nor qualify that devise by a subsequent and separate paragraph."

The attempt of appellants here to find ambiguity in the second paragraph of Mr. Lewis' will is substantial indication of their recognition of its importance to their case.

The rule that all portions of a will must be construed together in order to ascertain and carry out testator's intention is sound. Were the granting paragraph ambiguous as to testator's intention the rule could be properly invoked here. But without the third paragraph there is no ambiguity. If, as we hold, the second paragraph is clear, and if, as the trial court holds, the third paragraph is repugnant to its clear devise of absolute title, the conclusion reached by the trial court is inescapable.

III. But we are unwilling to imply approval of that construction of paragraph three. We should avoid, if possible, the necessity of holding it repugnant to the absolute conveyance in the preceding paragraph. That is part of our duty to ascertain the testator's intention.

There is sound reason for holding the third paragraph precatory, not mandatory. It is true testator (or his scrivener) begins it with the words "It is my will and desire", and that the word "will" frequently may connote "the legal declaration of a person's mind as to the manner in which he would have his property or estate disposed of after his death." Webster's New International Dictionary, Second Edition.

But the same authority also defines it: "Wish or desire; specif.: inclination; pleasure." It does not always have a mandatory meaning. It is followed here by the word "desire", certainly nonmandatory. A familiar rule of construction would suggest the words be construed together to express an intention that would harmonize with both. So considered the combination seems to construe the word "will" as being merely precatory.

That construction is fortified by consideration of the language of the first paragraph of the will which also commences: "It is my will and desire", exactly as does the third, and continues with a totally unnecessary direction to pay debts and funeral expenses, which every lawyer knows to be the executor's legal duty without testamentary direction.

Our discussion at this point should recognize that without addition of the words "and desire" the expression "It is my will" should, or at least could, be construed as "more than a recommendation." In re Application of Hulse, 142 Neb. 406, 415, 6 N.W.2d 618, 623, citing Temple v. Russell, 251 Mass. 231, 146 N.E. 679,

49 A. L. R. 1. But in the Massachusetts case the phrase is used in the same paragraph with the one it modifies. We cannot be persuaded by these decisions to hold the expression here repugnant to the clear devise in paragraph two.

As a precatory expression of desire the third paragraph suggests but does not command that the beneficiary make a will dividing the estate between or among the heirs of both "as by law may be found in such share or shares as she may designate." The expression "as by law may be found" is certainly not clear.

The whole paragraph suggests there may have been consultation between them (but no decision) as to what division between heirs would be wise. This conjecture is not rendered improbable by the fact that there were eventually nearly thirty people in the combined groups of heirs. Testator's decision to leave it to her to decide later is apparent. The words "as she may designate" certainly confirm that explanation of the paragraph.

The record discloses she consulted two lawyers relative to making a will. One witness says she was "old and crippled." Whether by choice or by reason of uncertainty of mind, she made no will. We cannot make one for her. Nor can we decree any division of her estate between these objectors and resisters.

If the third paragraph of the will was merely precatory, and since Mrs. Lewis did nothing in compliance with it, it was, as the trial court found, "ineffective." Thus any possible error in finding it repugnant was without prejudice.

Our conclusion makes immaterial any discussion of the admissibility or inadmissibility of the oral evidence as to the understanding of either testator or beneficiary concerning the meaning of the will.

The decision of the trial court is therefore affirmed.— Affirmed.

All JUSTICES concur.