In the Matter of the ESTATE of Ole J. HANSEN, Deceased.

CENTRAL NATIONAL BANK & TRUST COMPANY, Executor, Appellee,

v.

Lyle A. HANSEN, Ardell Hansen, and Dallas D. Hansen, Appellants,

and

Orville J. Hansen, Appellee.

No. 60459.

Supreme Court of Iowa.

April 19, 1978.

Herrick, Langdon, Belin, Harris, Langdon & Helmick by Charles E. Harris and Curt L. Sytsma, Des Moines, for appellants.

Cullison & Cullison and Louis, Moore & Kohorst, Harlan, for appellee Hansen.

Considered by MOORE, C. J., and MASON, UHLENHOPP, REYNOLDSON, and McCORMICK, JJ.

UHLENHOPP, Justice.

This appeal involves a question, among others, of whether two clauses in a will are contradictory or compatible.

Testator Ole J. Hansen owned 80 acres of land (the eighty) which he mortgaged in 1964 to buy additional land. He had four children, Orville, Lyle, Ardell, and Dallas, and during his lifetime he made various gifts to them to assist them. He rented the eighty to Orville for $5 per acre plus taxes and upkeep. Orville also placed improvements on the eighty and paid the installments which became due on the mortgage. Testator's wife predeceased him.

In 1972 testator executed his will, which was prepared by a layman. We set it out:

I, Ole J. Hansen of Kimballton, Iowa, County of Audubon, State of Iowa, being of sound and disposing mind and memory, and mindful of the uncertainty of human life, do hereby make, publish and declare this my Last Will and Testament as follows, hereby revoking all wills by me at any time heretofore made.

Section 1. I direct that all my just debts, funeral expenses and the cost of administering my estate be paid out of the principal of my estate.

Section 2. I request and bequeath that my beloved children, Orville J. Hansen, Lyle A. Hansen, Ardelle Hansen, and Dallas D. Hansen are to share and share alike all my personal, Real estate, Stocks and Bonds.

Second: I further request, my son Orville J. Hansen, is to have the 80 acres, situated and described as follows: Jackson Township 79, Range 37, Shelby County, Iowa

NE NW Sec. 25–40–1

SE NW Sec. 25–40

At the price of $265.00 per acre. The mortgage on this farm is to be paid by Orville J. Hansen, of which this loan was used, to purchase the Peter Mikkelsen farm, in the year 1964. Furthermore an agreement was made between my son, Orville J. Hansen and I, Ole J. Hansen, in the year 1964, whereby, Orville was to pay taxes, upkeep, and cash rent at $5.00 per acre, per year on the above mentioned 80 acres. This unpaid rent is to divided equally to share and share alike between the above mentioned heirs, my beloved children.

Third: I hereby appoint my son, Lyle A. Hansen, executor of my last will and Testament to serve without Bond.

IN WITNESS WHEREOF, I have hereunto subscribed my name as testator this 18th day of November in the year of our Lord One Thousand Nine Hundred and seventy-two.

The 80 acres described in paragraph Second of Section 2 of the will constitutes the eighty in question.

Testator died on December 31, 1975, survived by his four children. His will was admitted to probate.

The four children disagreed as to the effect of paragraph Second of Section 2. Lyle declined to act as executor, the probate court appointed a bank, and the bank petitioned the probate court to construe that paragraph.

The probate court held that Orville has an option to buy the eighty for $265 per acre and payment of the mortgage, that Orville must also pay the unpaid rent of $5 per acre per year, and that the proceeds from Orville's purchase of the eighty, plus the rent, will constitute assets of the estate. The court also held that the will is clear and unambiguous and no necessity exists to consider extrinsic evidence. Lyle, Ardell, and Dallas appealed. We will refer to them as appellants.

■ I. Appellants argue that the trial court should have considered extrinsic evidence in construing the will. They did not have the probate court proceedings reported, and while that court stated in its decision that extrinsic evidence is unnecessary we have no actual ruling refusing to admit extrinsic evidence; at no point in the record do we find that appellants proffered extrinsic evidence. Were we to reverse to permit admission of extrinsic evidence, we would do so on speculation that such evidence exists and that it would affect the result. If appellants desired to make and preserve a point on the court's refusing to receive and consider extrinsic evidence, they should have asked to have a report made of the

proceedings, tendered their evidence, and made an offer of proof if it was refused. Since the proceeding was in equity, Code 1977, § 633.33, probably an offer of proof would have been unnecessary—the court would have received the evidence subject to the objections made, if any. Then we could have seen that extrinsic evidence actually exists and what it consists of. *Grosjean v. Spencer*, 258 Iowa 685, 695, 140 N.W.2d 139, 145 ("We have no idea what the excluded evidence of Mrs. Grosjean and Dr. Liechty might have shown. It might have supported plaintiffs' case and it might have harmed it. We cannot predicate error upon speculation as to the answers."); 5 Am. Jur.2d Appeal & Error § 604 at 69–70; 4 C.J.S. Appeal & Error § 291 at 893, 895–900.

Endeavoring to explore appellants' present argument fully, we have examined all of the records from the probate court, including letters from testator, minutes of devisees' meetings, appellants' trial-court brief, and the contents of the entire probate file, but we find nothing which would affect the result in the case. On the record presented we reject appellants' argument relating to extrinsic evidence.

■ II. Appellants next argue that a proper reading of testator's will reveals the two paragraphs of Section 2 are contradictory and paragraph Second must therefore fail. Reaching a contrary result, the probate court relied on *In re Estate of Roberts*, 171 N.W.2d 269 (Iowa).

We have examined the *Roberts* decision and find it indeed persuasive in the case at bar. Involved in *Roberts*, as here, was the question whether two clauses in a will were conflicting or compatible. Rejecting older decisions which perhaps more easily found a conflict between will clauses, this court stated in *Roberts* at page 273:

> Regardless of some past pronouncements, we now prefer the rule that only where subsequent provisions of a testator's will are clearly in conflict with specific gift provisions and both cannot stand, can the clear and obvious intent of the testator be disturbed and the subsequent provisions be declared ineffective.

The will in *Roberts* actually presented a stronger argument for conflict than here. The case involved paragraphs 2, 3, 4, and 5 of Roberts' will. In paragraph 2 Roberts gave his wife $40,000 of personal property and, in case of deficiency, enough real estate of her choosing to make up $40,000 (she did not choose to take any of the particular farm in question). In paragraph 3 he gave his wife the life use of all his property with power of sale as needed for her maintenance (she did not sell the farm in question). In paragraph 4 he directed his executor to sell the farm in question to Vern A. Roberts for $300 per acre. Finally, in paragraph 5 Roberts directed "After the said life use given above" that "all" of his real and personal property should go to his four children.

This court reconciled and gave effect to all of these will clauses and did not find a necessity to void the paragraph giving Vern A. Roberts an option. The four children would not get the farm in question itself if Vern exercised the option, but they would get its proceeds; the gift to them of "all" property could thus be carried out. The court was careful at page 273 to distinguish a case of genuine conflict: "This is not the case of a bequest of Blackacre to A and an attempt by a subsequent provision to grant an option to buy Blackacre to B."

The present case falls under *Roberts*. Appellants cite several other cases but those decisions are distinguishable on the facts or are older decisions of a kind somewhat disparaged in *Roberts*. Among them is *Todd v. Stewart*, 199 Iowa 821, 202 N.W. 844. There the will in paragraph 13 gave the "Blackledge farm" to residuary devisees "absolutely and in fee simple" but in a subsequent paragraph changed the gift in an unreconcilable fashion; one or the other of the paragraphs had to give way. Another is *In re Estate of Bigham*, 227 Iowa 1023, 290 N.W. 11. In that case however the two paragraphs in question were not inconsistent with each other. A third case is a classic example of a precatory paragraph as distinguished from a conflicting one, *In re Estate of Lewis*, 248 Iowa 227, 80 N.W.2d

347. We will return to this case for further consideration. A fourth case is *Schmidt v. Claus*, 250 Iowa 314, 93 N.W.2d 592. That case appears irreconcilable with the *Roberts* decision and perhaps precipitated the altered view enunciated in *Roberts*. Credence to this conclusion derives from a remark in Justice Thompson's special concurrence in *Schmidt* at page 18, 93 N.W.2d at 595: "However; it seems proper to comment that the rule against repugnancy which we have adopted, and have applied here, is highly technical and generally has the effect, as in the instant case, of reaching a result which the testator did not intend and which is contrary to the expressed intent of the will if it is construed in accordance with its plain language." Whether we would today reach the result in *Schmidt* is doubtful, in view of the intervention of the *Roberts'* rule requiring all clauses of a will to be given effect if reasonably possible. We need not decide that question, however, as the present facts are closer to *Roberts* than *Schmidt*, and indeed stronger for reconciliation than the *Roberts'* facts themselves.

We conclude as the probate court did that the paragraphs before us are compatible under the *Roberts'* principle, and that the older decisions do not require a contrary result. While the first paragraph of Section 2 gives "all my personal, Real estate, Stocks and Bonds" to the four children, it does not give them the eighty specifically. They will receive the proceeds from the sale of the eighty as personalty (plus the unpaid rent). We thus hold that the two paragraphs of Section 2 are not irreconcilable.

■ III. Appellants argue finally that the language in paragraph Second of Section 2 expresses only a wish—the words are precatory rather than imperative. Precatory expressions are said to be "Words of entreaty, request, desire, wish, or recommendation, employed in wills, as distinguished from direct and imperative terms." Black's Law Dictionary (Rev. 4th Ed.).

Commonly the problem arises when a testator devises property to a particular person and then addresses a wish to that person.

Such a case is *In re Estate of Lewis*, supra, 248 Iowa 227, 80 N.W.2d 347. In those situations the likelihood is stronger that the wish is precatory than when it is not addressed to the devisee. *In re Johnson's Estate*, 238 Iowa 1221, 30 N.W.2d 164; 80 Am.Jur.2d Wills § 1168 at 283 (It is quite generally agreed that "the word [such as 'request' or 'wish'] may be used as a term of disposition, equivalent in effect to such words as 'give,' 'devise,' 'bequeath,' etc., and that, at least where it is not directed to a beneficiary in whose favor a gift is made by previous language in the will, this effect will normally be given to it"); 95 C.J.S. Wills § 602 at 801–804 (words addressed to executor less likely to be precatory). See also Restatement, Trusts 2d § 25, Comment b. Testator does not appear here to direct the words regarding the option to the four children.

■ Appellants lean heavily on the word "request" in the clause, "I further request, my son Orville J. Hansen," etc. But the word request, in context, may be imperative. *Keiser v. Jensen*, 373 Ill. 184, 25 N.E.2d 819; *Carpenter v. Wells' Administrator*, 272 S.W.2d 659 (Ky.); *In re Will of Moody*, 155 Me. 325, 154 A.2d 165; *Ferguson v. Massachusetts Audubon Soc.*, 316 Mass. 436, 55 N.E.2d 891; *Spencer v. Childs*, 1 N.Y.2d 103, 150 N.Y.S.2d 788, 134 N.E.2d 60; *In the Matter of the Estate of Martin*, 32 A.D.2d 849, 300 N.Y.S.2d 751; *In the Matter of the Construction of the Will of Bluestein*, 277 App.Div. 385, 100 N.Y.S.2d 350, motion den. 302 N.Y. 698, 98 N.E.2d 489, order aff'd, 302 N.Y. 760, 98 N.E.2d 886; *In re Hand's Estate*, 315 Pa. 238, 172 A. 666. Moreover, the word "request" here does not stand alone; it is followed by the mandatory words "is to have" the eighty at $265 per acre and also by the words the mortgage "is to be paid". The paragraph continues in language of like tenor: an agreement was made that Orville "was to pay" taxes, upkeep, and cash rent, and his cash rent "is to [be]" divided among the four children.

Appellants also emphasize that the first paragraph of Section 2 uses the mandatory

word "bequeath" ("I request and bequeath that my beloved children"), while paragraph Second does not ("I further request, my son Orville J. Hansen"). The omission of "bequeath" appears appropriate in paragraph Second, however, since the first paragraph devises and bequeaths property while the second creates an option and explains the arrangement which existed between testator and Orville.

A final consideration is the difference in the setting of the paragraph in question from the setting of the usual precatory clause. Here testator had business dealings with Orville and in his will he worked out the resolution of his dealings: Orville was to have the eighty for $265 plus the mortgage, and pay the back rent. This is quite a different situation than the usual one of a precatory clause in which a testator gives a beneficiary property and then expresses the hope that he will use it in a certain way.

We arrive at the conclusion which the probate court reached that the paragraph is not merely precatory.

In sum, we construe Section 2 of the will as follows. In the first paragraph of the section testator gives his four children all of his property, including the eighty and Orville's rent obligation, subject to payment of claims, taxes, and costs of administration. In paragraph Second testator gives Orville an enforceable option to purchase the eighty by paying the executor $265 per acre (or $21,200) and by discharging the mortgage. If Orville does not so exercise the option within a reasonable time after procedendo issues in this appeal, then the four children will own the eighty in fee simple, subject to the mortgage but free of the option. If however Orville does so exercise the option within such time, then the executor will, in execution of paragraph Second, convey the eighty to Orville in fee simple and the four children will own the proceeds of $21,200. In either event, Orville is obligated to pay the executor the unpaid rent on the eighty of $5 per acre per year, which will constitute an estate asset.

AFFIRMED.