# IN THE COURT OF APPEALS OF IOWA

No. 19-1214
Filed November 4, 2020

## IN THE MATTER OF THE ESTATE OF VERA E. CAWIEZELL, Deceased.

## PHYLLIS KNOCHE, TERRY BROOKS and JILL BROOKS,
Co-Executors-Appellants.

_____

Appeal from the Iowa District Court for Muscatine County, Thomas G. Reidel and Patrick McElyea, Judges.

The executors appeal several issues concerning the district court's construction of the decedent's will. **AFFIRMED.**

Gregg Geerdes, Iowa City, for appellants.

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellees Tom and Beth Coronelli.

John L. Holmes of Koenig Law Firm, Rock Island, Illinois, for appellee Greg Ales.

Heard by Mullins, P.J., and May and Schumacher, JJ.

**SCHUMACHER, Judge.**

The executors appeal several issues concerning the district court's construction of the decedent's will. We determine the district court properly ruled a restriction on alienability in the decedent's will was not valid. We affirm the court's ruling on the provisions of the will concerning the farm tenant's first right of refusal to purchase the farmland and his continued leasing of the property. We also determine the court properly determined the boundary lines of the decedent's residence. Accordingly, we affirm the decision of the district court.

## I.    Background Facts & Proceedings

Vera Cawiezell was a hardworking former schoolteacher with a deep devotion to her 150-acre Muscatine County farm. She was actively involved in the farm's operation and assisted with her livestock until she was ninety years old. Cawiezell did not have children. Cawiezell died on April 17, 2018, at the age of ninety-four years, with her will nominating executors Phyllis Knoche, a friend; Terry Brooks, a farm tenant; and Jill Brooks, Terry Brooks's wife. This case involves the last will and testament of Cawiezell and the difficulties that arose between the executors and beneficiaries of the will. Cawiezell's will provided:

> Item 2. I hereby will, devise and bequeath my residence house and buildings close to home which are a part of my farm residence to my 2nd Cousin, Greg Ales. My executors are further authorized and empowered to determine the boundary lines for the survey of the farm residence. In addition, I give and bequeath all of the household contents located in my home to Greg Ales.
> Item 3. I hereby will, devise and bequeath all of my farm real estate located in the Northeast Quarter of Section 21, Township 78 North, Range 4 West of the 5th P.M. in Muscatine County, Iowa, except my homestead referred to in Item 2 above, consisting of approximately 150 acres to my friends, Tom and Beth Coronelli or unto the survivor of them, subject to the restriction that they should not sell or transfer the property outside their immediate family within

a period of twenty years after my death. Terry Brooks has been leasing the farm from me under a share crop agreement and I would request that the Coronelli family continue leasing to Terry under favorable terms for his benefit. I further give Terry Brooks the first option to purchase the farm during the twenty year period following my death and I would further request that the terms of sale be favorable for Terry Brooks.

The will further provided Brooks would receive Cawiezell's farm machinery and livestock. Additionally, any debt he owed to Cawiezell was forgiven. Knoche received the remainder of Cawiezell's estate. The probate inventory shows Cawiezell had total gross property worth about $2.5 million.

As directed by the will, the executors, working with a surveyor, designated the residence property that was to be transferred to Ales. On November 2, 2018, the executors asked the court to approve the legal description of the residence. They also asked that the legal description of the farm property to be transferred to the Coronellis contain language recognizing the restriction on selling the property and noting Brooks's option to purchase. The Coronellis resisted the executors' requests concerning the farm property, arguing any restrictions in the will on their ability to sell or transfer the property were unfair, unreasonable, and unenforceable. Ales also objected to the legal description of the property set aside as the residence.

A hearing was held on January 2, 2019. The district court was concerned about potential self-dealing and determined "the decisions need to be made by an Executor who has no financial or personal interest in the execution of the above tasks." The court appointed a temporary executor, Gary McKenrick, to determine the area for the residence, draft proposed legal descriptions for the residence and farm property, make a recommendation concerning the restriction on transfer of

the farm property, and submit a report to the court. The executors filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2), which was resisted by Ales. Based on the motion, the court ordered McKenrick "to make a recommendation to the Court regarding whether the garage should be included" in the property awarded to Ales.

McKenrick notified the parties on February 27, that he was recommending "the garage, existing driveway, well, and existing electrical service line . . . be included in the residential plat." McKenrick also stated:

> Regarding the issue of a restriction or limitation on alienation of the farm/agricultural tracts, my conclusion is that the provision in the will for the 20-year sale restriction is not enforceable. However, the 20-year right of first refusal in favor of Terry Brooks is enforceable and must be incorporated into the deed.

The executors contested McKenrick's recommendations.

After a hearing, the court found "the garage building is part of the residential property." The court ordered the plat to be redrawn to include the garage. The court also found the restraint-on-alienation provision of the will was not valid, citing *Guenther v. Roche,* 29 N.W.2d 222, 223 (Iowa 1947). The court determined "it is equitable and consistent with the testator's intent to uphold the right of first refusal" for Brooks. The Coronellis were ordered to give Brooks notice ninety days before listing the property for sale.

The Coronellis and the executors filed motions pursuant to Iowa Rule of Civil Procedure 1.904(2). Each party also resisted the other party's motion. The district court ruled:

> The Court's intent in structuring the right of first refusal in the manner it did was to give Terry the option to purchase the property before it was listed on the open market. The Court finds there does need to

be further specificity with the right of first refusal in that Terry shall have 90 days to exercise his right and the price shall be a fair market value price for the property. In the event the parties are unable to agree on an amount, the fair market value shall be determined by an average of two appraisals, one obtained by Terry and one obtained by the Coronellis. The Court finds this is in keeping with the testamentary intent that the terms of sale be favorable to Terry, rather than forcing him to match an offer from the open market. Once the 90 days has expired or Terry has declined to exercise his right in writing, whichever event occurs first, the property may be listed and sold to a buyer of the Coronellis' choosing.

The court determined the boundaries for the residence should be those set out by McKenrick. The court denied the executors' request to further address its ruling on the issue of the validity of the provision restricting the Coronellis' ability to sell the farmland. The executors appeal the district court's ruling.

## II.      Standard of Review

Under Iowa Code section 633.33 (2018), this probate action was tried in equity. *See In re Estate of Hurt*, 681 N.W.2d 591, 593 (Iowa 2004). In equitable actions, our review is de novo. *Id.*

## III.     Restriction on Alienation

The executors claim the court improperly invalidated the provision in Cawiezell's will stating the bequest of farmland to the Coronellis was "subject to the restriction that they should not sell or transfer the property outside their immediate family within a period of twenty years after [Cawiezell's] death." The court found this restriction on alienation could not be enforced.

The case cited by the district court provides, "The courts generally will not give effect to a testamentary provision to the effect that a devisee shall not for a period of time sell the property devised." *Guenther*, 29 N.W.2d at 223. The Iowa Supreme Court has stated, "A general restraint on alienation, whether by deed or

will, is undoubtedly void." *Crecelius v. Smith*, 125 N.W.2d 786, 789 (Iowa 1964). Also, "the right of alienation has been considered an inseparable incident to an estate in fee, and it is repugnant to the estate conveyed and against the policy of the law to allow restraints to be imposed on the alienation of such an estate." *Id.*

The executors assert the provision is valid and enforceable under Iowa Code section 614.24. This section was enacted in 1965, and the executors contend that it changed the general rule against restrictions on alienation. *See* 1965 Iowa Acts ch. 428, § 1. Section 614.24(1) provides that an action arising from a will "reserving or providing for any reversion, reverted interest or use restrictions in and to the land therein described" cannot be brought "after twenty-one years from the admission of said will to probate."

The executors assert the restriction on alienation in Cawiezell's will is a "use restriction." The term "use restriction" is defined[1] as follows:

[A] limitation or prohibition on the rights of a landowner to make use of the landowner's real estate, including but not limited to limitations or prohibitions on commercial uses, rental use, parking and storage of recreational vehicles and their attachments, ownership of pets, outdoor domestic uses, construction and use of accessory structures, building dimensions and colors, building construction materials, and landscaping.

Iowa Code § 614.24(5).

The executors contend "a restriction on the alienation of property is considered to be a restriction on the use of property," citing *Sisters of Mercy of Cedar Rapids v. Lightner*, 274 N.W. 86, 92 (Iowa 1937). The case sets out the general rule, "In this state a restraint against alienation in a conveyance of a vested

---

[1] The definition includes certain exceptions, which are not applicable here. *See* Iowa Code § 614.24(5)(a)–(c).

estate in fee simple is void, and this is true though the restraint is for a limited or particular time." *Sisters of Mercy*, 274 N.W. at 92. "However, gifts to charitable uses do not come within the prohibition of the rule." *Id.* Because the case involved a donation for a charitable use, the exception rather than the general rule was applied. *Id.* We conclude *Sisters of Mercy* does not support the executors' argument that a use restriction should be considered a restriction on alienation in situations that do not involve a charitable donation. Additionally, we have not found any other authority to support this proposition.

Furthermore, the purpose of section 614.24 is to "give effect and stability to record titles by rendering them marketable and alienable-in substance to improve and render less complicated the land transfer system." *Amana Soc. v. Colony Inn, Inc.*, 315 N.W.2d 101, 112 (Iowa 1982). "[T]he section imposes a twenty-one-year limit on the life of land-use restrictions 'by providing for automatic termination of the covenants in the absence of affirmative actions to continue them.'" *Chipman's Subdivision Homeowners Ass'n, Inc. v. Carney*, No. 11-0545, 2012 WL 642869, at *2 (Iowa Ct. App. Feb. 29, 2012) (quoting *Compiano v. Jones*, 269 N.W.2d 459, 461 (Iowa 1978)). Thus, the purpose of section 614.24 is to simplify the transfer of land, not to impose restrictions on the alienation of property.

We determine the district court properly ruled the restriction on alienability in Cawiezell's will was not valid.

## IV. Provisions Involving Brooks

**A.** Cawiezell's will "request[ed] that the Coronelli family continue leasing to Terry under favorable terms for his benefit" and "request[ed] that the terms of sale be favorable for Terry Brooks." The executors assert the term "request," as

used here, should be considered mandatory. "[T]he word request, in context, may be imperative." *In re Estate of Hansen*, 264 N.W.2d 746, 749 (Iowa 1978). Usually, however, a request is "a precatory clause in which a testator gives a beneficiary property and then expresses the hope that he will use it in a certain way." *Id.* at 750.

We previously stated, "Precatory expressions are words of entreaty, request, desire, wish, or recommendation, as distinguished from direct and imperative terms. Compliance with a provision which is precatory is not compulsory. The terms 'wish' or 'desire,' however, are often not merely precatory, but have the force and effect of a specific direction." *Greer v. Bruck*, No. 02-1025, 2004 WL 149215, at *2 (Iowa Ct. App. Jan. 28, 2004) (citations omitted). "A wish directed to a beneficiary is generally regarded as precatory, unless clearly the words express the testator's intention to the contrary; where the words are addressed to an executor, they are regarded as mandatory." *In re Estate of Johnson*, 30 N.W.2d 164, 166 (Iowa 1947).

The requests in Cawiezell's will were directed to the Coronellis, who are beneficiaries, and therefore, the term "request" should be considered precatory, rather than mandatory. *See id.* We determine the term "request" should be given its usual interpretation in this case, meaning a hope the beneficiaries will use the property in a certain way. *See Hansen*, 264 N.W.2d at 749. The will does not contain additional mandatory language which would change the context of the request in this case. *See id.* at 749–50 (finding a request, followed by mandatory language, made the request "not merely precatory").

**B.** Cawiezell's will stated, "I further give Terry Brooks the first option to purchase the farm during the twenty year period following my death and I would further request that the terms of sale be favorable for Terry Brooks." The district court construed the phrase "first option" as a right of first refusal, stating, "The Court's intent in structuring the right of first refusal in the manner it did was to give Terry the option to purchase the property before it was listed on the open market." On appeal, the executors argue Brooks has an option, rather than a right of first refusal.

"An option creates in the optionee a power to compel the owner of property to sell it at a stipulated price whether or not he be willing to part with ownership." *Trecker v. Langel*, 298 N.W.2d 289, 290 (Iowa 1980). The right of first refusal is the "'right to elect to take specified property at the same price and on the same terms and conditions as those contained in a good faith offer by a third person if the owner manifests a willingness to accept the offer.'" *Mercy Hosp. v. McNulty*, No. 14-0241, 2015 WL 576016, at *3 n.7 (Iowa Ct. App. Feb. 11, 2015) (quoting *First Refusal*, Black's Law Dictionary (6th ed. 1994)).

The district court ruled, "Terry Brooks shall retain a right of first refusal on the property and shall be given 90-days notice by the Coronellis prior to listing the property for sale." The Coronellis filed a rule 1.904(2) motion, asserting that if the Coronellis received a competing offer for the property, Brooks should have fourteen days to respond. On June 4, 2019, the executors filed a resistance to the Coronellis' rule 1.904(2) motion, stating:

> [The executors] request the Court affirm its previous decision regarding the 90-day time period to refuse or accept a right of first refusal. The Court should further state that [the] Coronellis cannot

sell the property without first offering the property to Terry Brooks for the same price and terms of sale.

Before the district court, the executors accepted the court's decision that Cawiezell's will gave Brooks a right of first refusal and asked the court to affirm its earlier ruling on this issue. "Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in trial court. *State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999). "Under the Doctrine of Invited Error, it is elementary a litigant cannot complain of error which he has invited or to which he has assented." *McCracken v. Edward D. Jones & Co.*, 445 N.W.2d 375, 378–79 (Iowa Ct. App. 1989). We conclude the executors are barred from arguing Brooks received an option rather than a right of first refusal. Also, the executors agreed to the ninety-day time limit, precluding their arguments on appeal challenging that time period.

**C.** The executors claim the district court improperly construed the provision "request[ing] that the terms of sale be favorable for Terry Brooks." The executors assert Brooks should be able to buy the farmland for twenty-five percent less than the fair market value. The executors state the terms of sale would not be "favorable" to Brooks unless there is a reduction in price. In the ruling on the rule 1.904(2) motions, the court stated Brooks should pay "a fair market value for the property."[2]

---

[2] The parties do not challenge the specific terms of the district court's ruling providing for what should happen "[i]n the event the parties are unable to agree on an amount . . . ." For this reason, we do not address the individual terms in the court's ruling on this hypothetical situation.

As noted above, the executors' resistance to the Coronellis' rule 1.904(2) motion stated, "The Court should further state that [the] Coronellis cannot sell the property without first offering the property to Terry Brooks for the *same price* and terms of sale." (Emphasis added.) By their argument in the district court, the executors have already agreed that Brooks could be required to pay the same price for the farmland as the Coronellis are offering it on the open market. The executors' assent to this provision in the district court precludes them from arguing on appeal that the provision was improper. *See id.*; *see also State v. Hall*, 740 N.W.2d 200, 202 (Iowa Ct. App. 2007) (noting a party "may not allege error on an issue to which he acquiesced").

**D.** Cawiezell's will provided, "Terry Brooks has been leasing the farm from me under a share crop agreement and I would request that the Coronelli family continue leasing to Terry under favorable terms for his benefit." The executors first repeat their argument that the Coronellis are restricted from selling or transferring the farmland for a period of twenty years. They claim a lease is considered to be a conveyance, and conclude the Coronellis may not lease the property to anyone other than Brooks for a period of twenty years.

We have already determined the provision stating the Coronellis should not sell or transfer the property for twenty years is invalid. *See Guenther*, 29 N.W.2d at 223. As the predicate for the executors' argument is not legally viable, we do not accept their conclusion. In addition, we have determined the term "request" as used here is precatory, not mandatory. *See Johnson*, 30 N.W.2d at 166.

### V.     Legal Description of Residence

The executors contend the district court should have adopted their proposed legal description for the residence, which was bequeathed to Ales.[3] They point out the will provides the "executors are further authorized and empowered to determine the boundary lines for the survey of the farm residence." The provision applies to Cawiezell's "residence house and buildings close to home which are a part of [her] farm residence."

Where executors are vested with a discretionary power to determine disputes arising under a will, they must exercise this power in good faith. *Talladega Coll. v. Callanan*, 197 N.W. 635, 637 (Iowa 1924). The executors' actions may not be arbitrary or contradict the provisions of the will. *Id.* "In other words, the power may not be abused." *Id.*

In the ruling on January 11, 2019, the district court stated,

In no way is the Court doubting the integrity and honor of the Co-Executors, but a conflict certainly exists regarding all actions they are taking. Terry and Jill Brooks are farm tenants and are using the garage. This could certainly impact their determination that the garage does not constitute "a building close to the home."

Due to this conflict of interest, the court appointed a temporary executor pursuant to Iowa Code section 633.343. This section provides:

At any time during the administration of an estate, the court, for good cause shown, may appoint a temporary administrator to carry out such orders of the court as may be necessary for the proper administration of such estate. No appeal from such appointment shall prevent the temporary administrator from proceeding in the discharge of the administrator's duties.

---

[3] Ales has not made an appearance in this appeal. The Coronellis filed an appellate brief but take no position on this issue.

Iowa Code § 633.343; *see also In re Trust of No. T-1 of Trimble*, 826 N.W.2d 474, 486 (Iowa 2013) (noting a court may appoint a temporary administrator "for good cause shown").

The executors did not contest the appointment of the temporary executor, although they disagreed with his recommendations. They presented no challenge on the issue of whether there was "good cause" to appoint the temporary executor. *See In re Estate of Jarvis*, 185 N.W.2d 753, 756 (Iowa 1971) (finding a party could not contest the appointment of a temporary administrator when the party did not challenge the appointment of the temporary administrator and assisted in the temporary administrator's investigation).

"We note that in appropriate cases administration by an executor appointed under a previously admitted will may be terminated or interrupted by application of section . . . 633.343." *In re Estate of Franzkowiak*, 290 N.W.2d 1, 4 (Iowa 1980). The court directed the temporary executor to "[d]etermine a reasonable and fair survey of the home to include buildings close to the home to include at a minimum the garage and use of the current entrance to the property." The executors' duty to determine the boundary lines of the residence were terminated or interrupted by the court's direction to the temporary executor to perform this duty. *See id.* At that point, the issue was no longer within the discretion of the executors.

We determine the district court properly set the boundary lines for the residence to include the garage. The garage was closer to the house than some other outbuildings, such as a machine shed and corn crib, which were not included in the residence property. There were some small farm tools in the garage, but primarily Cawiezell used the garage to park her personal vehicle. There was a

path from the garage to the house. We conclude the legal description approved by the district court properly includes Cawiezell's "residence house and buildings close to home which are a part of [her] farm residence."

We affirm the decision of the district court.

**AFFIRMED.**